1. ESTATES—APPRAISAL—SECURITIES—AVERAGE PRICES—REASONABLE PERIOD.
    The three months preceding decedent's death was a reasonable period within which to average the market price of securities by an appraiser, within Laws 1891, c. 34, § 1, providing that when necessary, under the law to appraise a deceased person's estate, such securities as are customarily sold in open market shall be valued by ascertaining the range of the market and the average of prices running through a reasonable period of time.

2. TAXATION—ESTATES—APPRAISER'S FINDING—REVIEW.
    The finding of an appraiser that gifts made two months before decedent's death were inter vivos, and not causa mortis, and hence not subject to a transfer tax, will not be disturbed on appeal, when a full and fair investigation was had.

In the matter of the estate of Horace H. Crary. From an order confirming the report of an appraiser fixing the transfer tax on said estate, the comptroller of the state of New York appeals. Affirmed.

H. C. Olmstead, for appellant.
W. J. Welsh, for respondent.

ARMS, S. Upon the filing of the appraiser's report in this matter the surrogate made an order confirming and assessing the tax in accordance therewith, and from such determination and order the comptroller has taken this appeal.

Two questions are raised: First, that the appraiser erred in his manner of arriving at the value of certain stocks upon which a tax

was assessed; and, second, that he erred in not finding that certain transfers of stocks made by the decedent to his children, grandchildren, and a brother and sister a short time prior to his death, were "made in contemplation of the death of the testator," and were therefore taxable.

Upon the first point it appears that the appraiser arrived at the value of the stocks in question by taking the average sales of the same for the three months next prior to decedent's death. Section 1, c. 34, Laws 1891, so far as it applies to this case, provides as follows:

"Whenever by reasons of the provisions of any law of this state it shall become necessary to appraise in whole or in part the estate of any deceased person, * * * the persons whose duty it shall be to make such appraisal * * * shall value all such property, stocks, bonds or securities as are customarily bought or sold in open markets in the city of New York or elsewhere, for the day on which such appraisal or report may be required, by ascertaining the range of the market and the average of prices as thus found, running through a reasonable period of time."

The date at which the fair market value of the stocks in this case was required to be ascertained was the date of decedent's death, and it appears that such value was arrived at by consulting Manson's Monthly Handbook, and taking the average price of actual sales in the open market for the aforesaid period. No question is made but that the appraiser followed the rule laid down in the statute above quoted, nor that the authority used by him was not reliable; but it is contended that he erred in arriving at his determination, from the report of sales covering too long a period, and that it would have been nearer correct had he based his findings on sales covering the period from 10 days prior to 10 days subsequent to decedent's death. There seems to be nothing in the evidence on which to base such contention, and, with an entire absence of any facts tending to show that the appraiser did not reach a fair conclusion, I am unable to see how there could be any justification for reversing his finding, and substituting another and purely arbitrary one, on this appeal. The statute which furnished the rule for the appraiser required him to find the "range of the market * * * running through a reasonable period of time." In the same statute the legislature fixed what it evidently considered a reasonable period of time in regard to appraisals of real estate, by requiring the appraiser to consider "actual sales of neighboring real estate similarly situated during the year immediately preceding"; and, in my judgment, a range of three months for stocks and securities sold in the open market would be a fair and reasonable period, as compared with one year on real estate. There can be no fixed and inflexible rule, applicable to all cases; and an examination of the cases upon this question both prior to and since the enactment of the statute quoted shows that the courts have uniformly approved what seemed to be a reasonable application of the law to the particular case in question, although considerable variation would occur in different cases in regard to the period of time considered. Hence it would seem that the determination of the appraiser upon that branch of the case ought not to be disturbed.

The second point raised presents a more serious question, as it is based upon no settled principle of law, or any rule of evidence au-

thorizing definite and specific deductions from the certain class of facts established by the evidence. It appears that a little less than two months prior to decedent's death he transferred to each of his five children certain stocks and securities, of the value of about $50,000 each, or an aggregate of $250,000, and that he contemplated such transfers for about one year prior to their being made; that for about six months prior to his death he had been negotiating with his brother J. M. Crary for the creating of a trust fund of $20,000 for the support of J. Mason Crary, an indigent brother, by the decedent and said J. M. Crary each contributing $10,000, and that such negotiations were completed and $10,000 paid in by said J. M. Crary about one month prior to decedent's death, and that about two weeks prior to his death the decedent transferred $10,000 worth of bonds to the trustee, as his share of such trust fund; that one month prior to his death he transferred to two granddaughters stocks of the value of $2,300, and about two months prior to his death he transferred stocks of the value of $1,285 to a sister. It is asserted by the appellant that all the aforesaid transfers were made "in contemplation of death," and are therefore subject to a tax. The making of gifts to members of his family was not a late and sudden idea that possessed the decedent, for it appears that for a period of several years prior to his death he had been in the habit of making considerable gifts from time to time to members of his family, over which no question is made here; and it should also be remembered, in this connection, that, notwithstanding all such gifts and transfers, the decedent left an estate, exclusive of real property, of over $1,000,000, upon which a transfer tax has already been paid. Upon the hearings before the appraiser the state was represented by an attorney of large experience in such matters, and thoroughly familiar with the statutes and decisions appertaining thereto. The appraiser was an attorney of integrity, ability, and experience, and the estate was represented by one who for many years had been the private and confidential counsel of the decedent and his family in their business affairs, and the investigation seems to have proceeded openly and fairly, without any attempt to conceal or evade any of the facts; and after such investigation the appraiser found, as a matter of fact, that the transfers in question were not made in contemplation of death, within the meaning and intent of the statute. It is conceded that the gifts were inter vivos, and not causa mortis. The question presented to the appraiser was purely one of fact, and while, from its peculiar nature, it is hedged about with difficulties, it is none the less a question of fact, and as such falls within the well-settled rules of findings of fact by a trial court. The statute was evidently intended to reach absolute transfers of property when made under a certain condition, viz. when the transferror was contemplating death; that is, the thought of death has taken so firm a hold on his mind as to control and dictate his actions regarding his property, and the business is transacted while contemplating death, and considering what conditions would arise or exist in the event of death without making the transfer, or, to be more specific, the contemplation of death is the sole motive and cause of the transfer. The transferror, realizing and contemplating that

he is to die, wishing certain of his property to pass in a different manner than it would under the statute or by the terms of a will theretofore made, makes the transfer "in contemplation of death," and such transfer is taxable, whether made one day or one year prior to death; but, if made with other motives and for other causes, it is not taxable, no matter when made, as it cannot be presumed that the legislature intended to place any limitation upon the inherent right of a person to give away his property whenever and to whomsoever he desires.   The peculiar operation of a particular person's mind at a particular time, and while transacting a particular kind of business, is something which is not susceptible of direct proof, nor is it within the realm of expert analysis; and if the application of this statute is surrounded by grave difficulties, dependent to a certain extent upon the psychological speculations of the appraiser who is prosecuting the investigation, the remedy lies with the legislature, and not with the courts.

Many reasons will recur to the mind why even an old man, in poor health, possessed of a large property, might make transfers which would not necessarily be made "in contemplation of death," within the purview of the statute; and, under the foregoing construction of the statute, the findings of the appraiser that the transfers in question were not made in contemplation of death, and hence are not taxable, should be sustained, and a decree may be entered accordingly.   Decreed accordingly.