## SHWAB v. DOYLE, Collector of Internal Revenue.

(Circuit Court of Appeals, Sixth Circuit.   December 10, 1920.)

### No. 3364.

1. **Internal revenue ☜8—Estate tax applies to prior transfers in contemplation of death.**

Under Revenue Act 1916, tit. 2, § 201 (Comp. St. § 6336½b), imposing tax on the estate of every person dying after the act took effect, section 202, subjecting to the tax all transfers made at any time in contemplation of death, and section 202b (Comp. St. § 6336½c), creating presumption that transfers without consideration made within 2 years of death are in contemplation of death, transfers made before the act took effect by one who died after it became effective are taxable, since the death is the generating source of the tax, whether the transfer took effect immediately or only at death, and there is no reason why both classes of transfers should not be equally taxed.

2. **Internal revenue ☜2—Classification of transfer in contemplation of death as testamentary is within power of Congress.**

A classification of transfers made in contemplation of death and of those intended to take effect after the death of grantor as equally testamentary in character is one within the power of Congress.

3. **Constitutional law ☜286—Internal revenue ☜2—Tax on testamentary transfers made before act took effect does not deny due process of law.**

Internal Revenue Act 1916, tit. 2, § 202 (Comp. St. § 6336½c), when construed to impose a tax on transfer made before the act became effective by one who died thereafter, is not void, as denying due process of law or as violating Const. amend. 5.

4. **Internal revenue ☜6—Tax on testamentary transfers is not "direct tax."**

The estate tax levied by Internal Revenue Act 1916, tit. 2, § 202 (Comp. St. § 6336½c), on transfers made in contemplation of death, is not a "direct tax," within the constitutional requirement of apportionment, but is clearly an excise or duty tax.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Direct Tax.]

5. **Constitutional law ☜42—Executor, paying tax, cannot object that it destroyed vested rights of transferees, if not injured.**

The executor of a decedent, who paid the estate tax on a transfer made in contemplation of death before the act became effective, cannot, in an action to recover the tax, object to the statute as unconstitutional, because interfering with the vested rights of the transferees, since any one attacking a statute as unconstitutional must show that the alleged unconstitutional feature injures him.

6. **Constitutional law ☜190—Retroactive tax on testamentary transfers is valid.**

The estate tax levied by Revenue Act 1916, tit. 2, § 202 (Comp. St. § 6336½c), on transfers made in contemplation of death, is not unconstitutional merely because it is retroactive, in that it applies to transfers made before it took effect by those who died thereafter.

7. **Internal revenue ☜8—Subsequent statute held not construction that earlier one did not tax transfers made before enactment.**

The fact that the Revenue Act of 1919 (Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.) expressly states that transfers in contemplation of death are taxable, whether made before or after the passage of the act, was not a construction by Congress that Revenue Act 1916, tit. 2, § 202 (Comp. St. § 6336½c), which imposed a similar tax without such express provision, did not apply retroactively.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
269 F.—21

**8. Internal revenue ⊕⇒8—Transfer in "contemplation of death" need not be based on apprehension from existing bodily condition.**

A transfer is taxable, as made in "contemplation of death," if the expectation or anticipation of death in either the immediate or reasonably close future is the moving cause of the transfer; it not being necessary that death is immediately impending by reason of bodily condition, though the condition of grantor's health at the time of transfer is an important feature in determining the ultimate question whether she was directly actuated by a contemplation of death.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Contemplation of Death.]

**9. Appeal and error ⊕⇒215(1)—Use of particular word in instruction held not reversible, without objection.**

In an instruction defining the term "contemplation of death," within the federal estate tax statute, the use of the word "distant," in the phrase, "anticipation of death in the reasonably distant future," instead of the word "close," does not require reversal, where there was nothing in the exception to call the trial court's attention to the proposition that the word "close" should have been used, instead of "distant."

**10. Trial ⊕⇒139(1)—Court cannot weigh evidence on motion for directed verdict.**

A motion to direct a verdict is properly overruled, if there is substantial testimony tending to support a conclusion to the contrary, since the court cannot weigh the testimony.

**11. Internal revenue ⊕⇒38—Evidence held to sustain verdict finding transfer made in contemplation of death.**

Evidence that 1½ years before her death decedent, who was then about 77 years of age and was suffering from a disease which is usually fatal, made a trust deed without consideration, transferring more than half her property, and shortly thereafter made a will containing some references to the transfer, *held* sufficient to sustain a verdict finding the transfer was made in contemplation of death.

**12. Internal revenue ⊕⇒38—Statutory presumption of fact can be considered in determining whether transfer was in contemplation of death.**

In an action to recover an estate tax collected on a transfer alleged to have been made in contemplation of death, it was proper to instruct the jury that the presumption created by Internal Revenue Act 1916, tit. 2, § 202b (Comp. St. § 6336½c), that voluntary transfers within 2 years before death are in contemplation of death, could be taken into account in determining whether the transfer was made in contemplation of death.

**13. Evidence ⊕⇒472(1)—Witness cannot state fact which was for ultimate conclusion of jury.**

In an action to recover a tax collected on a transfer charged to have been made in contemplation of death, it was incompetent for plaintiff to state whether the grantor had an expectation of death in the near future, which was the ultimate fact for the conclusion of the jury.

**14. Evidence ⊕⇒471(9)—Witness without personal knowledge cannot testify to understanding.**

A witness who apparently had no first-hand knowledge of the matter cannot testify as to his understanding of the purpose of grantor in making a transfer.

**15. Trial ⊕⇒75—Objection to testimony as incompetent too late, where same objection to same matter was previously overruled.**

Where the objection to a question as to the inclusion of income from a trust in the income tax returns of the grantor for the first year as immaterial was overruled, and the witness answered, a subsequent objection to substantially the same question, and motion to strike substantially the same answer because they were incompetent, is too late to raise the question of the competency of the evidence.

⊕⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**16. Internal revenue ⊚⇒38—Payment of state taxes held material as to purpose of transfer.**

In an action to recover a tax collected on a transfer charged to have been made in contemplation of death, where plaintiff claimed the transfer was made for the purpose of avoiding a state tax, it was material to show that the grantor and the grantee had not paid any taxes in the state and were not liable so to pay.

In Error to the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Action by Victor E. Shwab, as executor, against Emanuel J. Doyle, Collector of Internal Revenue. Judgment for defendant, and plaintiff brings error. Affirmed.

W. F. Keeney, of Grand Rapids, Mich., and John J. Vertrees, of Nashville, Tenn. (Willard F. Keeney and Julius H. Amberg, both of Grand Rapids, Mich., and John J. Vertrees and William O. Vertrees, both of Nashville, Tenn., on the brief), for plaintiff in error.

D. M. Kelleher, of Ft. Dodge, Iowa, and Myron H. Walker, U. S. Atty., of Grand Rapids, Mich. (Wayne Johnson, Solicitor, Internal Revenue, Raymond Thurber, of New York City, and D. M. Kelleher, of Ft. Dodge, Iowa, Sp. Attys. Bureau of Internal Revenue, and Myron H. Walker, U. S. Atty., of Grand Rapids, Mich., on the brief), for defendant in error.

E. S. Heller, Isaac Frohman, Edward F. Treadwell, John W. Preston, and Garret W. McEnerney, all of San Francisco, Cal., amici curiæ.

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge. Suit by plaintiff in error to recover an estate tax paid under protest.

On April 22, 1915, decedent made to the Detroit Trust Company a deed absolute in form, conveying personal property worth about $1,-000,000 in trust, for the payment of both interest and principal to certain beneficiaries, with no reservation in favor of the grantor. The conveyance took immediate effect, and was accompanied by delivery of the property conveyed. It was purely voluntary and without monetary consideration. Decedent died September 16, 1916, possessed of a remaining estate of about $800,000, upon which a tax was assessed and paid upon return by the executor under title 2 of the Revenue Act of September 8, 1916 (39 Stat. c. 463, U. S. Comp. Stat. § 6336½a), which took effect seven days before decedent's death, viz. September 9, 1916. That tax is not involved here, nor is its validity questioned. The tax here in question was assessed under section 202 of the same act (Comp. St. § 6336½c), as upon a transfer made in contemplation of death.

Plaintiff contended below, and contends here: (1) That the act was not intended to reach absolute conveyances in contemplation of death made before the passage of the act; (2) that, if so intended, it is unconstitutional; (3) that there was no substantial evidence that the

transfer was "in contemplation of death," within the meaning of the statute. The trial court denied plaintiff's motion for a directed verdict, held the statute valid and applicable to the trust deed, if made in contemplation of death, and submitted to the jury the question whether it was so made. There were verdict and judgment for defendant.

[1] 1. Was the act intended to apply to transfers made before its passage? Section 202 includes in the taxable value of a decedent's estate (a) property held by the decedent at the time of his death and subject thereafter to the payment of debts and expenses of administration, and to distribution as part of his estate; (b) property "of which decedent has at any time made a transfer, or with respect to which he has created a trust, in contemplation of, or intended to take effect in possession or enjoyment at or after, his death, except in case of a bona fide sale for a fair consideration in money or money's worth"; (c) property held jointly or as tenants in the entirety by decedent and any other person.

It will be observed that the transfers mentioned in subdivision (b) are of two classes—those made "in contemplation of death," and those "intended to take effect in possession or enjoyment at or after" death. We are concerned with the first only of these classifications.

In our opinion the statute evidences an intent on the part of Congress that the tax should apply to all transfers in contemplation of death, whether made before or after the passage of the act, provided the transferor's death occur after the act took effect. This intent is, we think, evidenced by a variety of considerations.

(a) Section 201 (Comp. St. § 6336½b) imposes a tax upon the transfer of the net estate of "*every*[1] person dying after the passage of this act." In section 202 the taxable estate of the decedent embraces all transfers of the two classes already mentioned which the decedent has "*at any time* made." The remaining paragraph of section 202b not already set out declares that—

"*Any transfer* of a material part of his property in the nature of a final disposition or distribution thereof made by the decedent *within two years prior* to his death without such a consideration [a fair consideration in money or money's worth] shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title."

The italicized words in each of the above quotations indicate, on their face, an all-embracing intent, and are thus prima facie opposed to a limitation to transfers made after the passage of the act.

[2] (b) The evident theory of the statute is that transfers intended to take effect after the death of the grantor, as well as those made in contemplation of death, are equally testamentary in character. Rosenthal v. People, 211 Ill. 306, 309, 71 N. E. 1121; Keeney v. New York, 222 U. S. 525, 536, 32 Sup. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139. Such classification is within the power of Congress. The theory of taxation on account of transfers testamentary in character is that death is the generating source of the tax. Knowlton v. Moore, 178 U. S. 41, 56, 20 Sup. Ct. 747, 44 L. Ed. 969; Cahen v. Brewster,

---

[1] All italics in this opinion ours.

203 U. S. 543, 550, 27 Sup. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215. A transfer is accordingly taxed only at the death of the transferor, no matter how long the transfer may precede death. Congress has accordingly included the two classes of transfers in one and the same section and subjected them, so far as terms go, to precisely the same treatment. In our opinion a transfer intended to take effect in possession or enjoyment after the grantor's death would under this statute be taxable, although made before the passage of the act. Wright v. Blakeslee, 101 U. S. 174, 176, 25 L. Ed. 1048. The natural inference would be, in the absence of substantial evidence to the contrary, that the same result was intended as to transfers made in contemplation of death.

(c) While the interests derived by a grantee under an absolute and immediately effective conveyance in contemplation of death are vested, the same is true of any irrevocable conveyance which takes effect in possession or enjoyment only upon the death of the grantor, although in the latter case such vesting is merely in expectancy. If Congress had power, as we think it had, to tax both classes of conveyances, even if made before the passage of the act, no good reason suggests itself why it should desire to discriminate between the two classes of transfers.

It is not to our minds unnatural, nor is it necessarily unjust, that Congress should intend that one taking a conveyance of a testamentary character, entirely without consideration, should do so at the risk of having the transfer taxed, directly or indirectly, as would be the case were the transfer by will or by conveyance taking effect at or after the grantor's death. Under this statute, however, the remaining estate of the decedent, both in case of a transfer intended to take effect at the grantor's death and in the case of a transfer made in contemplation of death (as well as in the case of transfers by will), is made primarily liable for the tax, and it is only when the estate proves insufficient for the purpose that resort may be had, under section 209 (Comp. St. § 6336½j), to the personal responsibility of the transferee or to the property transferred, and even then a right of action over is given to the transferee. We find in the language of section 209 ("if a decedent makes a transfer of or creates a trust with respect to, etc.") nothing which we think inconsistent with the construction of the act which we find disclosed by section 202 and by the other considerations to which we have called attention. Section 209 pertains merely to the remedy for the collection of the tax.

(d) Congress has not been averse to imposing taxation for a period preceding the passage of the taxing act. This has been ordinary practice with respect to income taxes. Indeed, the revenue act of September 8, 1916, here in question, provided for taxation of income accruing during the entire year beginning January 1, 1916. While in that case less than a year had elapsed, the distinction from the case presented here is one of degree and not of principle. The present income tax act, however, passed February 24, 1919 (40 Stat. c. 18 [Comp. St. Ann. Supp. 1919, § 6336⅛a et seq.]), imposed taxation for the year 1918, then wholly passed.

It is true that if the tax before us is retroactive it might, at least theoretically, affect conveyances made many years before a grantor's death, but this consideration is hardly practical. Congress would, we think, scarcely be impressed with a practical likelihood that a transfer made many years before a grantor's death (say 25 years, to use plaintiff's suggestion) would be judicially found to be made in contemplation of death under the legal definition applicable thereto, and without the aid of the two years prima facie provision. The considerations which we have enumerated, not only outweigh in our opinion those opposed thereto, but we think clearly, positively, and imperatively demand that the act be construed as intended to apply to transfers of the class here in question, although made before the act was passed, provided the death of the transferor occurs thereafter.

[3-5] 2. Is the statute unconstitutional as applied to the trust deed? In our opinion the act, if so construed, is not void as denying due process of law, or as violating the Fifth Amendment to the Constitution. Billings v. United States, 232 U. S. 261, 282, 283, 34 Sup. Ct. 421, 58 L. Ed. 596; Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 23, 24, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414. Nor do we think the tax is to be classified as a direct tax, and thus void as within the constitutional requirement of apportionment. It is clearly an excise or duty tax. Scholey v. Rew, 23 Wall. 331, 23 L. Ed. 99; Knowlton v. Moore, supra, 178 U. S. at page 78, 20 Sup. Ct. 762, 44 L. Ed. 969; Flint v. Stone-Tracy Co., 220 U. S. 107, 159, 31 Sup. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Keeney v. New York, supra, 222 U. S. at page 537, 32 Sup. Ct. 108, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139. Without enumerating every objection suggested against the validity of the tax, we think it enough to say that in our opinion its validity must depend upon whether or not it can be said to interfere with vested rights. As regards this consideration, we may set to one side the interests of the beneficiaries under the trust deed. Not only are they not complaining, but no tax has been assessed against their interests. No interest, vested or unvested, on their part is proposed to be or can be taken under the statute and the existing facts, for not only is decedent's remaining estate able to pay the tax, but it has already paid it. Decedent's estate alone, and those interested therein under her will, must bear the burden. It is settled law that one attacking a statute as unconstitutional must show that the alleged unconstitutional feature injures him. Southern Ry. v. King, 217 U. S. 524, 534, 30 Sup. Ct. 594, 54 L. Ed. 868; Plymouth Coal Co. v. Pennsylvania, 232 U. S. 531, 544, 545, 34 Sup. Ct. 359, 58 L. Ed. 713.

[6] As to plaintiff's interest: Assuming that he is entitled to raise the question, we think the statute not invalid because applying to transfers made before its passage. It does not affect transfers made after the transferor's death. Being within the all-embracing power of Congress over the subject of excise and transfer taxation, it is not necessarily unconstitutional merely because retroactive. Cooley on Taxation (3d Ed.) pp. 492–494; Billings v. United States, 232 U.

S. 261, 282, 34 Sup. Ct. 421, 58 L. Ed. 596, where the validity of the 1909 tonnage tax on the use of foreign-built yachts was assailed as retroactive; Brushaber v. Union Pacific R. R. Co., 240 U. S. 1, 20, 36 Sup. Ct. 236, 60 L. Ed. 493, Ann. Cas. 1917B, 713, L. R. A. 1917D, 414, which involved the validity of the income tax of 1913 as against a similar objection; Stockdale v. Insurance Co., 20 Wall. 323, 331, 22 L. Ed. 348, et seq., which involved the Income Tax Law of 1867. True, none of the cases referred to is on all fours with the instant case; but we think the principles they announce are decisive. Decedent's death being the generating source of the taxation, and the statute validly classifying it as of testamentary character, it logically follows, in our opinion, that it is valid to impose at decedent's death a tax on the testamentary transfer occurring before the passage of the act, regardless of the fact that title had already passed to the transferees. In Cahen v. Brewster, supra, 203 U. S. p. 549, 27 Sup. Ct. 174, 51 L. Ed. 310, 8 Ann. Cas. 215, et seq., a statute imposing an inheritance tax was sustained as to legatees of decedents dying prior to its enactment, but whose estates were still undistributed. This case is not without a certain amount of analogy; nor is there any controlling difference in principle between the assessment of a tax upon a previous testamentary transfer and the imposition of an income tax after the period covered thereby has wholly or in large part passed; nor—considering that death is the generating source of estate taxation—between an estate tax upon a transfer created by will and one upon a transfer created by testamentary deed, merely because in the one case a right of revocation existed while in the other it is absent, or because one took effect before and the other after the death of the transferor.

This conclusion makes it unnecessary to consider the correctness of the construction put upon the act by the trial judge, which distinguished between the "net estate" burdened by the tax, viz.: that which remained at decedent's death, and the net estate resulting from a gross estate which includes, for purposes of measurement, property previously transferred.

[7] Plaintiff urges that, in including in the Revenue Act of 1918 (40 Stat. 1057, 1097) the words "whether such transfer is made or occurred before or after the passage of this act," Congress indicated an understanding that the act here in question was not intended to so provide. We think it, however, the more reasonable inference that the amendment of 1918 was made to elucidate without changing the law, and put at rest any controversy on the subject. Johnson v. So. Pacific R. R. Co., 196 U. S. 1, 20, 21, 25 Sup. Ct. 158, 49 L. Ed. 363; United States v. Coulby (D. C.) 251 Fed. 982, 985, 986, affirmed (C. C. A. 6) 258 Fed. 27, 169 C. C. A. 165.

[8] 3. *Meaning of the Phrase "in Contemplation of Death."*— Plaintiff asked an instruction that—

"The words 'in contemplation of death' do not refer to that general expectation of death which every mortal entertains, but rather the apprehension which arises from some existing condition of body or some impending peril."

This request was refused, and the jury instructed that—

"By the term 'in contemplation of death' is not meant on the one hand the general expectancy of death which is entertained by all persons, for every person knows that he must die. * * * On the other hand, the meaning of the term is not necessarily limited to an expectancy of immediate death or a dying condition. * * * The term 'in contemplation of death' involves something between these two extremes. Nor is it necessary, in order to constitute a transfer in contemplation of death, that the conveyance or transfer be made while death is imminent, while it is immediately impending by reason of bodily condition, ill health, disease, or injury, or something of that kind. But a transfer may be said to be made in contemplation of death if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer."

It may be conceded that plaintiff's requested instruction would have been proper as applied to a gift claimed to have been made causa mortis—when the grantor was in a dying condition. But the instant case presented no such issue or claim. The transfer in question was an absolute gift inter vivos, claimed by the government to have been testamentary in character. On principle, and without present reference to authority, the ultimate question concerns the motive which actuated the grantor; that is to say, whether or not a specific anticipation or expectation of her own death, immediate or near at hand (as distinguished from the general and universal expectation of death some time), was the immediately moving cause of the transfer. Both the element of "existing condition of body," as distinguished from the grantor's mental state on that subject, and the term "impending," [2] are inconsistent with the prima facie provision of section 202b, which we have set out in paragraph (a) of the first division of this opinion.

Plaintiff's contention also overlooks the contribution which may be made to the grantor's state of mind and motive by a realization of the fact that she had already lived many years beyond the scriptural limit. Of course, the grantor's bodily health, especially as known to her, was an important factor in ascertaining her state of mind and determining the ultimate question whether she was directly actuated by a "contemplation of death." Upon principle we think the court's instruction correct.

Nor do we think the trial court's definition in conflict with any settled and controlling rule of construction. No federal decision directly in point is cited. Plaintiff relies on the decisions of the courts of New York, Illinois, Wisconsin, and California, construing similar statutes antedating the federal act (that of New York—1892—being the first in point of time), not only as authority for the construction for which he contends, but as raising a presumption that Congress adopted the construction put by the highest courts of those states upon their statutes.

In our opinion the decisions relied on by plaintiff do not completely or uniformly support his definition. The New York decisions are not convincing. In the Matter of Seaman, 147 N. Y. 69, 41 N. E. 401 (1895), the expression "in contemplation of death" was said in effect

[2] The Century Dictionary defines "impend" as: "To overhang; be ready to fall; be imminent; threaten; be on the point of occurring, as something evil."

to be confined to conveyances causa mortis. While this statement was obiter, it seems to have been reflected in some at least of the subsequent decisions of the New York courts; and while the proposition above cited was definitely rejected in Re Dee's Estate (Sur.) 148 N. Y. Supp. 423, affirmed (1914) 210 N. Y. 625, 104 N. E. 1128, and conveyances inter vivos held to be embraced within the phrase "in contemplation of death," it would not be unnatural that the decisions meanwhile construing that phrase should be more or less influenced by such earlier classifications. For instance, in the Matter of Spaulding's Estate, 49 App. Div. 541, 63 N. Y. Supp. 694, affirmed 163 N. Y. 607, 57 N. E. 1124, the decision was substantially rested on the ground of lack of evidence that the conveyance was made when the grantor was in extremis, or that it was made to avoid the estate tax. In the Matter of Mahlstedt's Estate, 67 App. Div. 176, 73 N. Y. Supp. 818, 820, decided before the statute had been definitely held to apply to gifts inter vivos, the essential question was said to be whether the transfer "was made in the then belief that he was not going to get well; that it was made in contemplation of his impending death, and for the purpose of defrauding the state of the transfer tax." Manifestly, the question of intent to evade has no pertinency to the case of a purely testamentary conveyance inter vivos. Rosenthal v. People, 211 Ill. 308, 309, 71 N. E. 1121. As showing the lack of the settled construction in New York contended for by plaintiffs, it is significant that in the Crary Case, 31 Misc. Rep. 72, 64 N. Y. Supp. 566, 568, the statute was defined as said to be—

"intended to reach absolute transfers of property when made under a certain condition, viz. when the transferor was contemplating death; that is, the thought of death has taken so firm a hold on his mind as to control and dictate his actions regarding his property, and the business is transacted while contemplating death, and considering what conditions would arise or exist in the event of death without making the transfer, or, to be more specific, the contemplation of death is the sole motive and cause of the transfer."

The state of mind of the grantor was, at least impliedly, recognized as the ultimate test (page 569).

The Illinois decisions fall short of supporting plaintiff's definition. In Rosenthal v. People, 211 Ill. 306, 309, 71 N. E. 1121, 1123, the only definition of "in contemplation of death" is this:

"A gift is made in contemplation of an event when it is made in expectation of that event and having it in view, and a gift made when the donor is looking forward to his death as impending, and in view of that event, is within the language of the statute."

The second half of the quotation presumably relates to the application to the statute of the facts of the case. Merrifield v. People, 212 Ill. 400, 72 N. E. 446, contains no definition of the term we are considering. The same is true of People v. Kelley, 218 Ill. 509, 515, 75 N. E. 1038, 1039. There a question of fact was alone involved, the court finding no evidence tending to show that the transferor—

"thought he was about to die at the time he executed said trust deed *or that he made said trust deed in contemplation of his death.*"

In Re Estate of Benton, 234 Ill. 366, 370, 84 N. E. 1026, 1028, 18 L. R. A. (N. S.) 458, 14 Ann. Cas. 107, the definition given in Rosenthal v. People was cited with approval. The court, after citing both the Rosenthal and Kelley Cases, said:

"Under the law as established by the foregoing decisions, the question at issue is whether the gift was made in expectation of death, and a purpose on the part of the donor to place his estate, or some part thereof, in the hands of those whom he desired to enjoy it after his death."

It is true that in People v. Carpenter, 264 Ill. 400, 408, 106 N. E. 302, 305, the court, citing the Rosenthal and Benton Cases, remarked:

"Of course, the words 'in contemplation of death,' as used in these statutes, do not mean that general expectation of all rational mortals that they will die sometime, but it means an apprehension of death which arises from some existing infirmity or impending peril."

But not only do the Rosenthal and Benton Cases fall short of fully sustaining that definition as an exclusive one, but the language we have quoted was purely obiter, as no claim was made that the trust agreements were executed "in view of death," and the decision in the trial court, as expressly stated in the opinion of the Supreme Court, did not rest on that ground. 264 Ill. 408, 106 N. E. 305.

Nor do the Wisconsin cases support plaintiff's contention. In State v. Pabst, 139 Wis. 561, 590, 121 N. W. 351, 359, it is said that the words "in contemplation of death" are—

"evidently intended to refer to an expectation of death which arises from such a *bodily or mental* condition as prompts persons to dispose of their property and bestow it upon those whom they regard as entitled to their bounty."

And again:

"A transfer valid as a gift inter vivos, if made under circumstances which impress it with the distinguishing characteristics of being prompted by an apprehension of impending death, occasioned by a *bodily or mental* state which has a basis for the apprehension that death is imminent, would be a transfer made in contemplation of death within the meaning of the law."

True, in State v. Thompson, 154 Wis. 320, 328, 329, 142 N. W. 647, 649, 650, 46 L. R. A. (N. S.) 790, Ann. Cas. 1915B, 1084, the court cited with approval the holdings in the Pabst Case, which we have already quoted; the quotation which we give in the margin from In re Baker's Estate [3] (83 App. Div. 530, 533, 82 N. Y. Supp. 390–392, affirmed 178 N. Y. 575, 70 N. E. 1094, also decided before the New York statute had been authoritatively held to include gifts inter vivos), and the holding in People v. Burkhalter, 247 Ill. 600, 604, 93 N. E. 379, 380, 139 Am. St. Rep. 351, that—

"Contemplation of death must be the impelling motive for making the gift in order that it be subject to an inheritance tax."

---

[3] "This court has held that the words 'in contemplation of death' do not refer to that general expectation which every mortal entertains, but rather the apprehension which arises from some existing condition of body or some impending peril."

The definitions given in these various citations are not uniform or entirely consistent. Moreover, the decision of the Thompson Case seems to have turned at the last on the question whether the grantor's age—

"was so great when the gifts in question were made as to establish the fact that they were made in contemplation of death."

The California decisions are not specially pertinent, for the reason that the California statute contains a definition of the term "in contemplation of death." Estate of Reynolds, 169 Cal. 600, 147 Pac. 268; Kelly v. Woolsey, 177 Cal. 325, 170 Pac. 837; Abstract Co. v. State, 173 Cal. 691, 694, 161 Pac. 264; Spreckels v. California, 30 Cal. App. 363, 369, 158 Pac. 549; McDougald v. Wulzen, 34 Cal. App. 21, 166 Pac. 1033; In re Minor's Estate, 180 Pac. 813, 4 A. L. R. 456. It is enough to say of these decisions (a) that they are not authority for the definition contended for by plaintiff; (b) that they specifically reject the New York definition, based upon the confusion between gifts causa mortis and conveyances inter vivos. Estate of Reynolds, supra, 169 Cal. at page 603, 147 Pac. 268.

[9] Criticism is made upon the expression "reasonably distant future," contained in the extract from the charge which we print in the margin.[4] It is, we think, not open to question that, had the word "close" instead of "distant" been used, the instruction would have been proper, so far as concerns imminency. That the trial court regarded the words as equivalent, or intended to use the words "reasonably close," appears from his opinion announced immediately before instructing the jury, in which the words "reasonably close" were used. While "close" and "distant" are frequently directly opposed to each other, yet when used as here they are not necessarily opposed. A time which is only reasonably distant is reasonably close. There was nothing in the exception to the definition as made which would call the trial court's attention to a proposition that the word "close" should have been used, instead of "distant," especially since there had been also an exception given to the court's announced intention to charge a "reasonably close" future. Norfolk & Western Ry. Co. v. Earnest, 229 U. S. 114, 119, 120, 33 Sup. Ct. 654, 57 L. Ed. 1096, Ann. Cas. 1914C, 172. Had the court's attention been called to the use of the word "distant," instead of "close," doubtless any question of difference between the two would readily have been obviated.

[10] 4. *The Sufficiency of the Evidence.*—The motion to direct verdict was properly overruled, if there was substantial testimony tending to support a conclusion that the conveyance was made in contemplation of death, even though the testimony would have supported a contrary conclusion, as it doubtless would. We cannot weigh the testimony. In our opinion, there was substantial testimony, and as it must be considered in its aspect most favorable to defendant, we

---

4 "But a transfer may be said to be made in contemplation of death if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer."

so state it, omitting for the most part specific mention of the considerations relied on by plaintiff, where not as matter of law decisive.

[11] Decedent was about 77 years of age when the trust deed was made. She had rheumatism of the knee, and was subject to frequent attacks of constipation, a condition said to have a tendency in elderly people to auto-intoxication. She had arteriosclerosis, which according to the medical testimony is usually fatal, and she died of apoplexy; a medical attendant testifying that in his judgment the apoplexy and death primarily resulted from hardening of the arteries, secondarily from age. She was a childless widow, and had lived most of the time for many years in the family of a sister, who was a paralytic, and who was the wife of Mr. Shwab, who was one of the beneficiaries in the deed of trust, the executor of decedent's will, and her business partner. Mr. Shwab had sole charge and management of the business, which was carried on at Nashville, Tenn., where Mr. Shwab and his family resided. During his life he was to receive the entire income from the trust estate. He was given the right to require sales of the trust securities to be made from time to time, and select substitutes therefor, and to have accountings made to him by the trustee. After his death the income was to be divided among six of the children of Mr. and Mrs. Shwab, subject to letting in a seventh child on the failure of issue of any of the other six. There were other provisions not important here.

The trust deed contains an express recital of decedent's desire "to make a division of the part of her estate particularly described herein"—words naturally importing a testamentary conveyance. On May 26, 1915, slightly more than a month after the trust deed was executed, decedent, her sister, and Mr. Shwab made their respective wills. Decedent's will, after making comparatively small bequests to the sister and her children, and providing for a continuance of the business after her death, at the option of Mr. Shwab, gives the latter absolutely the bulk of her estate, the will stating that—

"He and his wife, my sister Emma, and I have considered the disposition of our estates and agreed as to what under all the circumstances will be best for those for whom it is our desire to provide. * * * My sister will understand why I have bequeathed nothing to her. She has an abundance and well knows my affection for her, and that I have in contemplation that form of disposition of my estate which eventually will benefit those she loves so dearly"—referring to her sister's children.

Considering the recitals we have quoted from the trust deed and decedent's will, and taking into account all the attendant circumstances, it was open to inference by the jury that the deed was intended by decedent as part and parcel of one and the same general testamentary disposition. In 1914 decedent purchased a summer home in Michigan and became at that time a resident of that state. She continued to live in her sister's family, except during the summer. While there was testimony tending to show that decedent's motive in making the trust deed was merely to avoid Tennessee taxation, the jury was not bound under the evidence to so conclude, especially in view of the fact that she had never been called upon to pay taxes upon her se-

curities in Tennessee, and that she was in fact a resident of Michigan when the trust deed was made. The record contains, and counsel have discussed, a variety of considerations affecting the question of motive and the broader question whether the trust deed was made in contemplation of death. We think it clear that the evidence presented a question of fact for the jury's determination.

[12] 5. The instruction that the "presumption" afforded by the prima facie clause of section 202b, which is referred to in subdivision (a) of the first division of this opinion, could be taken into account in determining the fact of "contemplation of death," was not erroneous. R. R. Co. v. Landrigan, 191 U. S. 461, 473, 474, 24 Sup. Ct. 137, 48 L. Ed. 262. The provision in question raises a presumption of fact, not a presumption of law, and under well-settled rules a presumption of fact may be taken into account in determining the ultimate fact. The presumption is merely a rule of evidence whose enactment is within the legislative competency. Mobile, etc., R. R. Co. v. Turnipseed, 219 U. S. 35, 42, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. The very object of a presumption of fact is to supply the place of facts. Lincoln v. French, 105 U. S. 614, 617, 26 L. Ed. 1189. Of course, a presumption can never be allowed against ascertained and established facts. But unless the statutory presumption may properly be taken into account in determining the ultimate fact, it has no office. Elements which, in the absence of evidence to the contrary, are made sufficient to conclusively establish the ultimate fact, cannot be said to have no evidentiary influence in reaching that conclusion.

[13] 6. *Admission and Exclusion of Evidence.*—We find no reversible error in either of the respects complained of. The witness Spicer was not shown competent to answer the question put to him. It was plainly incompetent for Mr. Shwab to state a fact which was for the ultimate conclusion of the jury, viz. whether Mrs. Dickel had any expectation that she was in danger of passing away in the near future.

[14] It was also plainly incompetent for the witness Hager to testify that he understood that Mrs. Shwab, Mr. Shwab, and Mrs. Dickel made their wills together, "so that they would not excite Mrs. Shwab." He apparently had no first-hand knowledge of the matter.

[15] As to the inquiry of Mr. Shwab, on cross-examination, respecting the inclusion in Mrs. Dickel's income tax return of the first year's income under the trust deed: The court had already held that the income tax returns were not admissible. The question asked Mr. Shwab regarding the making of such return was objected to only as "immaterial." No exception was taken to the overruling of the objection. The subject was, in our opinion, material. He then testified, without objection, that the first year's income from the trust estate was included in that income tax return as part of Mrs. Dickel's income. It was only after the question had been substantially repeated that it was objected to as "incompetent, immaterial, and irrelevant," but without statement of the ground of the asserted incompetency, and without motion to strike out the testimony already

given. The objection was overruled, and the answer was substantially the same as before. The witness then testified at some length in explanation of an asserted mistake in making such inclusion.

[16] It is unnecessary, in our opinion, to determine whether the testimony in question was, for any reason, incompetent, for we think the objection on that score came too late. We do not intimate an opinion that it was incompetent. It was material to show that neither Mr. Shwab nor Mrs. Dickel had paid any taxes in Tennessee, or were liable to be required to so pay, in view of the fact that such liability had been put forward by plaintiff's counsel as the reason for making the trust deed in question.

Finding no error in the record, the judgment of the District Court must be affirmed.