818

ILLINOIS MERCHANTS TRUST CO., EXECUTOR, ESTATE OF EDMUND D. HULBERT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11204. Promulgated June 25, 1928.

*Hugh W. McCulloch, Esq.,* for the petitioner.
*Brice Toole, Esq.,* for the respondent.

**820**

OPINION.

MARQUETTE: Two questions are raised by this proceeding, namely: (1) Is the pension received by the decedent's widow insurance, the present value of which should be included as part of the gross estate, and (2) were the transfers of land and stocks made by Hulbert to his wife, gifts made in contemplation of and to take effect after Hulbert's death?

In our opinion the first question must be answered in the negative. The fund from which the pension to Mrs. Hulbert is derived was not an insurance. The contributions which Hulbert was compelled to make to this fund created no vested right in him or his beneficiaries to receive a pension, nor did it impose any contractual obligation upon the trustees of the fund to pay such pension. Whether or not such pension would be paid was entirely a matter of choice by the trustees. The only obligation arising from the decedent's contributions was, that if the pension should not be paid, then the total amount of the contributions, with compound interest, should be returned. The petitioner, as executor of Hulbert's estate, had a legal right, we think, to demand and receive the amount of his contributions, with interest. This total amount was $5,338.20 and should be included as part of the gross estate of Hulbert; but the respondent was in error in including as part of the estate the amount of $29,956.95 as the present value of the pension.

As to the second question, the portion of the Revenue Act of 1921 applicable here, is as follows:

SEC. 402. That the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \* \*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth.

As the transfers here in question were made more than three years before the death of the transferor, the statutory presumption as to transfers within two years of the death is not operative.

This Board, and the courts, have frequently had occasion to consider and interpret the clause, "made in contemplation of death." Thus, in *Philip T. Starck, Executor*, 3 B. T. A. 514, it was said:

In determining whether a transfer is made in contemplation of death, the Board must look to the expressions of the decedent, to the outward visible acts and circumstances surrounding a transfer of property prior to death.

\* \* \* \* \* \* \*

Webster's Unabridged Dictionary defines "contemplation" as the act of looking forward to an event as about to happen; expectation; act of intending, purposing, or considering, hence, intention; consideration; etc.

An act may well be performed in contemplation of death at some time in the future and yet not be in contemplation of death within the meaning of that phrase as used in the statute. The intention of Congress in the enactment of section 402 of the Revenue Act of 1918 was to provide for the inclusion in the gross estate of the value of any property concerning which the decedent made a transfer, except for a fair consideration in money or money's worth, in contemplation of death within a reasonable time in the near future, as distinguished from the general expectation of death entertained by everyone.

The same thought is expressed in *Spencer Borden, Jr.*, 6 B. T. A. 255; *Anna Serrien*, 7 B. T. A. 1129; *Anna L. Stark Lavelle*, 8 B. T. A. 1150.

In order that a transfer of property be included within the purview of the statute, there must have been not only an expectation "that death was near at hand, but such fear must have been the direct and moving cause of the gifts." *Anna L. Stark Lavelle, supra*. The same holding has been announced in *Shwab* v. *Doyle*, 269 Fed. 321; *Meyer* v. *United States*, 60 Ct. Cls., 474; *Spreckels* v. *State*, 30 Cal. App. 363; *State* v. *Pabst*, 139 Wis. 561; *Rea* v. *Heiner*, 6 Fed. (2d) 389.

Upon careful consideration we are of the opinion that the transfers by the decedent were not made in contemplation of death within the meaning of the statute; that is, the proximate or prime moving cause of the transfers was not an expectation by Hulbert that his

dissolution was then impending. His surgeon, in advising an exploratory operation, did not indicate anything of the sort—did not even urge great haste. The decedent had often told his wife that the land in question was hers, that he intended it for her, that he must attend to deeding it to her. He had also spoken, prior to the transfers, of his desire to put some stocks in her name so that she would have some independent income. He carried on his business affairs as usual during the week intervening between the time his physician advised the operation, and its performance. He proceeded with plans looking far into the future; told some of his associates that he was going to the hospital for a short time. He did nothing, apparently, toward that setting his house in order which would be the usual and natural course for some one who believed himself suffering from a fatal malady and who thought his end was near.

Regarding the $50,000 loan to Mrs. Hulbert, the proceeds of which were paid to and used by Hulbert in his business, the respondent suggests that the Board look with suspicion upon this transaction as being at least unsavory, if not actually fraudulent, and quotes from *Robert Jemison, Jr.*, 3 B. T. A. 780, at page 806. We are not greatly impressed thereby. The sentence quoted was *obiter* and was followed by this:

* * * But we can not disregard the separate legal existence of husband and wife as individuals, or their separate rights to hold property and to make separate income-tax returns under both the general law and the Revenue Acts. So long as avoidance is permitted in this matter we can not hold that the mere resort to it is a fraud.

Granted that the loan was made for the benefit of Hulbert, although, for reasons of his own it was made in his wife's name, we are unable to see any suspicion of fraud therein; nor is it proof that the stocks were given to Mrs. Hulbert in contemplation of death. The stocks used as collateral for this loan stood in Mrs. Hulbert's name on the books of the company. They were her property. We see nothing sinister in the fact that she allowed her husband to utilize her name in making the loan, her property in collaterally securing it, her dividends for the purpose of curtailing it.

In our opinion none of the property given to Mrs. Hulbert by her husband constituted a gift intended to take effect at or after the death of Hulbert. The transfers were complete when made and vested in Mrs. Hulbert the sole right and title thereto and interest therein. Thereafter, Hulbert's dominion over such property was ended. His legal right in and to its use and enjoyment ceased with the transfers. If Mrs. Hulbert chose to allow him the use of part or all of this property, it was her right and privilege to do so on any terms which suited her. That was her affair, and it concerns no one else.

The dividends on Mrs. Hulbert's holdings, declared before Hulbert's death but paid after that event, were no proper part of his estate and should not be included therein. The same is true of Mrs. Hulbert's checking account balance at the bank. It was her account, not that of the decedent, and in the circumstances we can not disregard the separate legal existence of husband and wife as individuals, or their separate rights to hold property and to use it as they see fit.

*Judgment will be entered under Rule 50.*