## Baker's Estate

*Hervey B. Smith,* for appellant.
*C. William Kreisher,* for respondent.

HUMES, J., June 17, 1940.—Dr. Frank Baker, a resident of Bloomsburg, Columbia County, Pa., died on July 24, 1938, at the age of 56. For many years prior to and within a few days of the date of his death, he was a very active business and professional man in Columbia County and the neighboring counties. By profession, he was a dentist, but of late years his varied and extensive business interests had taken so much of his time that they overshadowed his work in his profession.

A few months before his death, he made conveyances of his Columbia County real estate holdings: on April 2 and 4, 1938, conveying his home to his wife, Pearl Kline Baker; on April 2d, conveying a dwelling house to his daughter, Frances Alverna Pollock, and likewise, on April 2d, conveying to Robert James Baker and Harriet C. Baker a business building and double dwelling; all of these conveyances being in consideration of the sum of $1, "love and affection" for the grantees, and "other moral consideration," all these deeds being recorded on April 30, 1938, at the court house in Bloomsburg. On May 7, 1938, Dr. Baker, with his wife, conveyed to Robert James Baker 13 tracts of land in consideration of $1 and "love and affection and interest in grantee," this deed being recorded on May 18, 1938.

By action of Fred E. Lord, appraiser appointed by the Auditor General of Pennsylvania, a tax was assessed upon the above-described transfers of property by virtue of the Act of June 20, 1919, P. L. 521, art. I, sec. 1, as amended by section 2 of the Act of June 22, 1931, P. L. 690, 72 PS §2301, which imposes a tax "upon the transfer of any property, real or personal, or of any interest therein or income therefrom in trust or otherwise, to persons or corporations. . . .

"(c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect in possession or enjoyment at or after such death."

"If such transfer is made within one year prior to the death of the grantor, vendor, or donor of a material part of his estate, or in the nature of a final disposition or distribution thereof, and without an adequate valuable consideration, it shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this clause."

Pursuant to the further section of this act, the grantees of the several deeds mentioned in this case, being not satisfied with such appraisement, appealed to this court, and this court, being authorized by section 13 of the Act of 1919, supra, as amended by section 1 of the Act of July 15, 1935, P. L. 1028, 72 PS §2327, has proceeded to the determination of "all questions of valuation and of the liability of the appraised estate for such tax," testimony having been taken before Judge Herring, president judge of this court on March 12, 1940, counsel having stipulated of record at the hearing that the several appeals should be heard at one time. Judge Herring having been prevented by death from proceeding with further action in these matters, argument was then had before Judge Humes of the Twenty-ninth Judicial District of Pennsylvania, specially presiding; the counsel of record having filed their stipulation, agreeing to waive their right to take further testimony and to allow him to make findings and conclusions of law upon the printed record.

In considering these several appeals, we begin with the presumption that these conveyances were made in contemplation of death. The various elements to bring such presumption into existence are present: (1) The conveyances were of a material portion of Dr. Baker's estate; (2) they were in the nature of a final disposition or distribution; in fact, they were conveyances carrying out practically what he "had planned to do" in his will; (3) the conveyances were made within a year prior to Dr. Baker's death; (4) they were made without an adequate valuable consideration. That this is only a presumption is indicated by the phrase "unless shown to

the contrary": Case's Estate, 26 Northamp. 285. Therefore, our only question is whether the several appellants, respecting the several conveyances to them, have shown sufficient evidence to overcome that presumption. We do not deem it necessary to pass upon the technical question as to whether the rule that such transfer shall "be deemed to have been made in contemplation of death within the meaning of this clause" limits the presumption to "contemplation of the death of the grantor, vendor, or donor" only, and does not extend to such transfers as are "intended to take effect in possession or enjoyment at or after such death."

In determining whether in fact these conveyances were made by Dr. Baker in contemplation of death, we must consider carefully just what is meant by that term. In Shwab v. Doyle, etc., 269 Fed. 321, 328, the court stated: " 'By the term "in contemplation of death" is not meant on the one hand the general expectancy of death which is entertained by all persons, for every person knows that he must die. . . . On the other hand, the meaning of the term is not necessarily limited to an expectancy of immediate death or a dying condition. . . . The term "in contemplation of death" involves something between these two extremes. Nor is it necessary, in order to constitute a transfer in contemplation of death, that the conveyance or transfer be made while death is imminent, while it is immediately impending by reason of bodily condition, ill health, disease, or injury, or something of that kind. But a transfer may be said to be made in contemplation . . . if the expectation or anticipation of death in either the immediate or reasonably distant future is the moving cause of the transfer.' "

In Rea v. Heiner, etc., 6 F. (2d) 389, 392, contemplation of death within the meaning of the act was construed as "a present apprehension, from some existing bodily or mental condition or impending peril, creating a reasonable fear that death is near at hand; and that, so arising, it must be the direct and animating cause, and

the only cause, of the transfer. If this apprehension, so arising, is absent, there is not that contemplation of death intended by the statute, especially when another adequate motive actuating the gift is shown"; further on quoting, from Meyer et al., etc., v. United States, 60 Ct. Cls. 474, " '. . . there must be at least a belief that it [death] is to be expected in the very near future, rather than in the usual course of events, and in this state of mind, in this belief, in the near approach of death, must be found the motive for the conveyance' "; and stating succinctly at another point that " 'the expectation of death must be the direct, specific, and immediate animating cause of the transfer'."

In Wanamaker's Estate, 8 D. & C. 569, 573, the court indicated that by " 'in contemplation of death,' we mean, first, that death is contemplated . . . as an event . . . that is, in the circumstances, definitely imminent in the near future; and, second, that this contemplation of death exists as the impelling motive of the transfer or gift".

Examination of the testimony in the instant case with these criteria in mind reveals that, although Dr. Baker by his conveyance was doing "only what he had planned in his will", nevertheless, it cannot fairly be said or believed that the anticipation of death was uppermost in his mind, or that it was the "impelling motive of the transfer; the direct, specific and immediate animating cause; the direct and animating cause, and the only cause," or even "the moving cause".

The testimony does not describe a man who was putting his earthly house in order, laying aside his earthly tools, and preparing to cease his earthly labors. Contrariwise, it describes a man who was disposing of his smaller tasks, to allow him to assume greater ones. To this end, he turned over the house in which his daughter lived to her; his son having proved faithful and competent in the management of the quarry business, he turned over those properties to him. It was logical for

him to turn these properties over to his children for he wished them to be secure in his lifetime; he had had a struggle for existence in his younger days; apparently his own parents had died in his youth. He naturally wanted his children to appreciate the things he was able to do for them; how sensible it was for him to want them to appreciate his kindness during his lifetime rather than afterward. His motive for turning over the home property to his wife was to enhance her peace of mind, to help her in her own health, to "occupy her mind".

Dr. Baker had assumed large obligations, had undertaken great responsibilities outside of Columbia County, obligations and responsibilities which would require a great expenditure of time and energy for many years, if they were to be successfully borne. Certainly a man in contemplation of death as defined in the cited cases would not voluntarily have assumed those obligations and responsibilities.

Other evidence too leads us away from the presumption of the law as to the impelling motive; the possibility that the transfer of the Columbia County properties may have been motivated by a shrewdness to protect those properties from execution if the larger business deals were not successful; the plans for fishing excursions, avocations of a man in full vigor; the apparent good health of Dr. Baker; his seemingly unbounded energy and vitality, his good spirits; his failure to consult a doctor, or have a medical examination, as he most certainly would have done, had he been apprehensive of impending death. When we compare this with the court's statement in Rea v. Heiner, etc., supra, p. 392: "Her sound condition, mentally and physically; her active participation in important affairs; her expressed belief that she would live to a very old age; the preparation she was making for extensive improvements on her farm and at her home in Canada—all these, in connection with the animating motives for the transfer here-

inbefore found to exist, conclusively rebut and overcome the presumption of the statute"; we can likewise do nothing but hold that the testimony conclusively rebuts and overcomes the presumption of the statute.

We see no merit in the contention of the Commonwealth that the transfers were "intended to take effect in possession or enjoyment" at or after the death of Dr. Baker. The cases cited by the Commonwealth were cases of trusts where the settlors reserved life interests: Leffmann's Estate, 312 Pa. 236; Cooper's Estate, 320 Pa. 418; or where the settlor reserved the right to change beneficiaries, to obtain advances or loans, to surrender for the cash value, and to declare new trusts: Myers' Estate, 309 Pa. 581.

In contrast, the conveyances of Dr. Baker were absolute, the transfers were complete, the deeds were delivered, the grantees were in unconditional possession, and the transactions fully consummated. It is true that Dr. Baker said that Robert would join in a note if necessary to obtain credit, and Robert would on request have turned the profits and rents or even the properties themselves over to his father. "He could have them if he wanted them, you bet"; but this was a matter of grace, not of legal right in the father. It was a natural outgrowth of the mutual love, affection, and trust between the son and the father. The gift was unconditional; it needed no conditions. Had the father not had confidence and faith in his son, he would not have felt impelled to make the gifts. With the presiding judge in Wanamaker's Estate, supra, p. 571, we arrive "at the conclusion that the intimate personal relations existing between . . . [father] and . . . [son] made the gift entirely natural," and in our opinion made conditions unnecessary.

Relative to the sharing of profits and rents, with the son, and continuing to live in the house with his wife, we cite Schaszberger's Estate, 34 D. & C. 367, 375, holding:

"There is no merit in the contention of the Commonwealth that because decedent continued to live with his daughter in part of the premises conveyed until the time of his death, this indicates that the possession or enjoyment was postponed until decedent's death."

With the facts so found by the court, we can only find these

*Conclusions of law*

1. The gifts of Frank Baker made in his lifetime to Pearl Baker (through Robert Baker, strawman) and to Frances Alverna Pollock and to Robert James Baker and Harriet C. Baker, of April 2, 1938, recorded April 30, 1938, and the gifts from Frank Baker to Robert James Baker of May 7, 1938, recorded May 18, 1938, were not made by him in contemplation of or intended to take effect in possession or in enjoyment at or after his death.

2. The property which was the subject of the gifts was not subject to taxation as part of the estate of the said Frank Baker.

3. That the several appellants named as grantees of the real estate by the conveyances in question have the right to appeal in this matter.

4. That the several appeals to the above numbers and term should be sustained.

*Decree*

And now, June 17, 1940, the appeal of Pearl Kline Baker, no. 28, December term, 1939, the appeal of Frances Alverna Pollock, no. 29, December term, 1939, the appeal of Robert James Baker, no. 30, December term, 1939, and the appeal of Robert James Baker and Harriet C. Baker, no. 31, December term, 1939, are sustained and the appraisement for direct inheritance tax purposes of the real estate described in the several appeals is set aside.