# Wright's Appeal.

*What Instruments are Wills or Deeds within the Collateral Inheritance Acts.—Tax, by whom payable.*

A decedent had assigned before his death $10,000 worth of stock to a trustee, in trust that he would pay the assignor the income for life, and after his death pay certain sums and annuities to persons named in the declaration of trust, if they should outlive him, and the remainder to the purposes to be declared in his will, reserving the right to revoke all the trusts therein declared for other persons, but died without such revocation: *Held*,

    1. That the sum so assigned was subject to the collateral inheritance tax.

    2. That the executors were the persons from whom it was to be demanded.

APPEAL from the Orphans' Court of *Philadelphia*.

This was an appeal by the surviving executors of Joseph Wright, deceased, from the decree of the Orphans' Court, allowing to the Commonwealth the sum of $500 for collateral inheritance tax, being five per cent. on $10,000. The facts of the case were these :—

On the 24th of June 1853, by deed-poll, "The Pennsylvania Company for Insurance on Lives and Granting Annuities," reciting that Joseph Wright had assigned and transferred to the said company the following securities, viz : .

100 shares of the Pennsylvania Railroad Co., par value, $5000
  50   "    "     Bank of Kentucky,         "      5000

covenanted with the said Joseph Wright that they would hold the said securities and the income thereof in trust to pay to him the income thereof for life, and upon this further trust, upon and immediately after the decease of the said Joseph Wright, to pay over

    I. The sum of $1400, in specified sums, to four persons which were named, or to "such of them as may be living at the time of the decease of said Joseph Wright."

    II. The sum of $2500 to seven employees of Wright, Bros. & Co., who were named, if they should continue in the employ of the firm or their successors at the time of the death of said Joseph Wright.

    III. Certain annuities to four persons, who were named, amounting in the aggregate to $360.

    The instrument also contained a power enabling the company to sell so much only of the said securities as might be necessary and sufficient to pay off and discharge the aforesaid trusts accruing at the time of the decease of the said Joseph Wright, the balance thereof to be held by them in trust to pay over and discharge the said annuities. The accruing interest from dividends thereof, as the said annuities respectively ceased and determined, to be re-invested, and after the decease of the an-

nuitants, the said securities, and all accumulations thereof, to be paid over by the company to the executors of the said Joseph Wright, or the survivors or survivor of them, "to be by them or him applied for the purposes expressed in any last will or testament of the said Joseph Wright now or hereafter to be made, thereby closing this trust for ever."

It also contained a power of revocation by Mr. Wright at any time during his life by any instrument under his hand and seal, attested by two witnesses, upon the execution whereof the trusts thereby created were to become void, and the trustees for the time being were to hold the securities, or such part thereof as might be affected by such revocation, to such uses as he should declare or appoint, and in default of such declaration or appointment, to the sole and absolute use of the said Joseph Wright, his heirs, executors, administrators, and assigns, as if the said instrument had never been made.

Mr. Wright died May 26th 1858, without having revoked the trust, or changed its investments.    By the will he directed

I. The payment of his debts.

II. The payment of an annuity of $400 to his widow, Hannah Wright, in lieu of dower.

III. To Eleanor D. J. Hogeland the sum of $4000, in addition to a certain annuity provided in the said deed of trust, to be paid to her by the executors out of the proceeds of his estate.

IV. After reciting that the testator had subscribed a sum of money to purchase a lot of ground for the purpose of establishing thereon a soup house, and house of industry, for poor persons residing within one mile from the corner of Main and Sellers street, in the late borough of Frankford, which had been accordingly purchased and conveyed by deed of July 1st 1854, to Joseph Wright, John Wright, Samuel Wright, Robert J. Wright, and John B. Koons, and the survivors of them, in trust for the uses aforesaid, and for such other uses and under such restrictions, both as to the disposition of the said premises and the management thereof, and the appointment of new and other trustees as might be declared and expressed in the testator's will; and reciting that the building had been completed and an association organized under the title of "The Industrial and Beneficial Institute of Frankford;" the testator directed the trustees to convey the said premises with the appurtenances unto the President and Managers of the Industrial and Beneficial Institute, their successors and assigns for ever, in trust for the uses in the said deed named, and for such other uses as his will directed, that is to say—(here follow certain specific directions as to the management of this charity).

V. To the said Industrial and Beneficial Institute the sum of $10,000, in trust for certain uses thereinafter mentioned and

[Wright's Appeal.]

declared, which concern the government and management of the charity.

VI. All the rest, residue, and remainder of the testator's estate, real, personal, and mixed, he devised and bequeathed to his executors, including any balance remaining in the hands of the Pennsylvania company aforesaid, resulting from the closing of the trust deed of the 24th of June 1853, as therein directed to be paid over to his executors for the purposes declared in his will. In trust first, to carry out the purposes and intentions thereinbefore expressed and contained, and finally the remainder to be equally divided between his son Robert J. Wright and his two daughters Frances Elizabeth Koons and Josephine Amanda Wright, and the survivors and survivor of them living at the time of his decease, and in case any of them should have died before the time of his decease, leaving issue, such issue to take its parent's share.

The executors filed their account, in which the above-mentioned $10,000 does not appear. The account was referred to Wm. Henry Rawle, Esq., as auditor, before whom Mr. *Gilpin*, for the Commonwealth, claimed the sum of $500, for collateral inheritance tax on the said sum. The auditor decided that only that portion of this fund which was to come into the possession of the executors, after the death of all the annuitants provided for in said deed, was subject to said tax. To this decision the following exceptions were filed on behalf of the Commonwealth:

1. That the auditor erred in not allowing the collateral inheritance tax on the whole fund transferred to and held by the Pennsylvania Company for Insurances on Lives and Granting Annuities.

2. That the auditor erred in refusing to allow the collateral inheritance tax on the whole fund, to wit, $10,000, and to order the payment of the same out of the fund in the hands of the executors.

And on behalf of the surviving executors as follows:

1. The auditor erred in deciding that any portion of the fund held by the Pennsylvania Company for Insurance on Lives, &c., under deed-poll, dated June 24th 1853, was subject to the payment of the collateral inheritance tax.

On hearing, the Orphans' Court made the following decree: "And now, July 10th 1860, this case having been argued and considered on the exceptions of the Commonwealth to the report of the auditor, it is ordered, that the report of the auditor be so far corrected and modified as to allow the sum of $500 for collateral inheritance tax to the Commonwealth of Pennsylvania, being five per cent. on $10,000."

The case was then removed into this court by the executors,

by whom the decree of the Orphans' Court was assigned for error.

*Wm. F. Judson*, for appellants.—The instrument by which this trust was created is not in law a testamentary paper : Wall *v.* Wall, 30 Mass. 96 ; Attorney-General *v.* Jones, 3 Price's Exch. Rep. 368 ; Hess *v.* Hess, 5 Watts 191 ; Hileman *v.* Bouslaugh, 1 Harris 355 ; Majoribanks *v.* Hovenden, 1 Drury 11 ; Andley's Case, Leonard (Eliz.) 166 ; Lightfoot's Executors *v.* Colgin, 5 Munf. 42 ; Dawson *v.* Dawson, Rice Eq. 243 ; Cumming *v.* Cumming, 3 Kelly 460 ; Jackson *v.* Culpepper, Id. 569 ; Greenfield's Estate, 2 Harris 502. Nor is it made so by the power of revocation which it contains. It is no less a deed for this reason. The legal title was vested in the Pennsylvania Company, and the equitable title in the persons named therein, both of which were liable to be divested by an act which however never was performed. If a deed and not a testamentary paper, it is not within the Collateral Inheritance Act.

The enactments on this subject show that this tax is only to be paid upon property which comes into the hands of executors for distribution. It is collected by charging them ; their sureties can only be discharged by paying it. It is payable before the legacies or distributive shares are paid. It remains a lien on the estate of the person who *died seised*. The receipt is given to the executor or administrator. When not paid, they may be cited by the register, &c. Nor is the trustee liable for it. He had no legal authority to retain it. If the decree of the court below be not reversed, the loss must fall on the children of deceased.

*Chas. Gilpin*, for the Commonwealth.—1. The main question in this case is, whether the fund deposited by the testator with the company, in trust, is in whole or in part chargeable with collateral inheritance tax ; and

2. If it be, whether the claim can be sustained in the forum selected, viz. :—before an auditor appointed to audit the accounts of the executors, and to report distribution.

The first question involves the considerations,

1. Whether the declaration of trust is a " will," or testamentary paper, or

2. A " deed, grant, bargain, or sale, made or intended to take effect, in possession or enjoyment, after the death of the grantor or bargainor."

I. The instrument appears to be testamentary in its character, from the following features, viz. :

1. The reservation of absolute control over it during the life of the testator.

2. The clause applying portions of the fund "to the purposes expressed (by him) in any last will and testament."

3. The concluding clause providing, in the event of revocation and no new appointment, that the fund should become the property of himself, his heirs, executors, administrators, and assigns.

II. This instrument or declaration of trust is "a deed or grant made, or intended to take effect, in possession or enjoyment, after the death of the grantor or bargainor," and within the letter as well as the spirit of the Act of 7th April 1826.

If it be not, it would seem difficult, indeed impossible, to devise a deed or grant which the terms of the act would cover.

Neither the possession nor the enjoyment of the testator are disturbed during his life. His power of revocation, notwithstanding the trust, reserves to him the absolute control of the corpus; the income is expressly reserved to him for life; and no title or beneficial interest, under it, could vest in or be claimed by any one but the testator during his life.

At his death, other vested interests accrued, and the instrument is in terms and in effect *made and intended to take effect in possession and enjoyment, after the death of the grantor or bargainor.*

III. If the fund covered by the trust is in whole or in part chargeable with the tax, it would seem that the law provides a remedy, and that the forum selected is the proper one.

If the trust fund is chargeable with the tax, it becomes the duty of the executors to demand and collect from the company the tax on every dollar distributed or to be distributed by the company under the deed, and they can no more avoid this duty than they can any other incident to their office.

Again, the balance of the principal of the trust fund must come, after the death of the last annuitant, to the executors: there is no other mode of administering the estate of the testator. This balance must exceed $6600.

Under these circumstances, it is submitted that the whole tax is chargeable against the estate in the hands of the executors or under their control.

The opinion of the court was delivered, March 25th 1861, by

Lowrie, C. J.—In this case the Commonwealth claimed, and was allowed, a collateral inheritance tax on $10,000, which had been part of the estate of Joseph Wright, deceased; and notwithstanding the very careful argument of the appellant's counsel, it appears to us very plain that the tax was rightfully allowed. The decedent had assigned $10,000 of stocks to the Pennsylvania Company for Insurance on Lives, in trust, to pay him the income for life, and after that, certain sums and annuities particularly specified, if the persons should outlive him, and the remainder to the purposes of his will, and had reserved a right to revoke all

or any of the said trusts or grants for other persons. He died without any revocation, and of course the trusts took effect in favour of his intended beneficiaries. The subject of the grant falls within the very words of the Act of Assembly, as a part of an estate transferred by a deed, intended to take effect *in possession* after his death. It took effect neither in right nor in possession, until his death, because none were to take who did not survive him, and because he might revoke the whole. There is no real difficulty about making the executors pay it; for they have means enough, and a large part of this very fund goes to them, and they are entitled at once to so much of it as is necessary to pay the tax. No doubt the trustee has retained from each beneficiary or legatee, the tax on his or her share. It ought to have done it.

Decree affirmed at the costs of the appellants.