## Edwards's Estate.

*Inheritance transfer tax—Estate by entireties—Conveyances intended to take effect in enjoyment after death or made in contemplation of death—Act of June 20, 1919.*

1. Where, about three weeks before his death, and during his last illness, though in a period of temporary improvement, a decedent conveyed property by deed to his attorney, who immediately reconveyed the same to decedent and his wife, no consideration having passed, such transfer was "intended to take effect in possession or enjoyment at or after" the death of the grantor, and "made in contemplation of" his death, and the property was subject to the inheritance transfer tax.

2. The language of the Act of June 20, 1919, P. L. 521, "in contemplation of death" means in expectation of death or with that event in view. It does not mean that general expectation which all rational persons have that they must die some time, but that apprehension of death that arises from some existing infirmity of such a character as would prompt an ordinarily prudent person to make a disposition of his property and bestow it upon those whom he regarded as most entitled to be the recipients of his bounty.

Appeal from assessment of inheritance transfer tax. O. C. Warren Co., March T., 1921, No. 39.

*J. H. Alexander* and *W. S. Clark,* for appellant.

*Peter E. Nelson,* for appellee.

LINDSEY, P. J., Dec. 30, 1921.—This is an appeal from the assessment of an inheritance tax upon certain real estate in the Borough of Warren, known as the Carver House property. The decedent, James Edwards, died Jan. 8, 1921. He had been the owner of the real estate in question for many years, but on Nov. 23, 1920, he, by deed, in which his wife joined, conveyed the property for a nominal consideration of one dollar to J. H. Alexander, who was his attorney, and on the same date J. H. Alexander and wife reconveyed the same property for the consideration of one dollar to James Edwards and Jennie L. Edwards, his wife, and the two deeds were filed for record at the same time in the recorder's office of Warren County. It is claimed by the appel-

lànt that, as a result of this transaction, an estate by entireties vested in James Edwards and Jennie L. Edwards, the appellant, and that thereby the appellant took title and possession of the entire estate in said property on Nov. 23, 1920, and that the effect of the death of James Edwards was to simply terminate the title of the said James Edwards in said property, but that no interest or title passed to the appellant on his death, she being already invested with the entire title under and by virtue of the deeds before referred to, and that the property in question is not subject to inheritance tax. The Commonwealth, however, claims that the transfer of title to the appellant by the said deeds was one (a) intended to take effect in possession or enjoyment at or after the death of the said James Edwards, and (b) was made in contemplation of the grantor's death, and, therefore, within the provisions of paragraph (c) of section 1 of the Act of June 20, 1919, P. L. 521, and subject to the tax imposed by said act.

The circumstances of the making of the two conveyances above recited were, that in the fall of 1920 Mr. Edwards was suffering from kidney disturbance, general breakdown and chronic diabetes. He had had these maladies for some time, but his condition became acute about Oct. 22, 1920. He did not improve, and was removed to the Warren General Hospital on Nov. 19, 1920. His condition before going to the hospital was described by Dr. Mitchell, who saw him at his home, as "a condition of semi-delirium, a good deal of distress, and hardly appreciated things that were occurring from day to day." After being removed to the hospital there was a marked improvement in Mr. Edwards's condition; he was able to be up and became mentally alert and cheerful again and talked about a trip to Atlantic City. The improvement, however, was temporary; he never was able to leave the hospital, and died there Jan. 8, 1921. The deeds in question were made Nov. 23, 1920, four days after Mr. Edwards was taken to the hospital. It appears from the testimony that Mr. Edwards purchased the Carver House about twenty-five years before his death; that his wife, the appellant, during the time he ran it, always was actively employed in assisting in the management of it; that the decedent had said to the appellant, as she testifies, "that I earned more of it than he did," and "that he always wanted to deed it to me while he was living;" that he had on several occasions talked of "making a joint deed," particularly before making a trip to Europe some years before his death. Nothing of the sort was done, however, before Nov. 23, 1920, but on July 13, 1917, the decedent made a will, by which, after three specific legacies, he left all his property to his wife, Jennie L. Edwards, which will was duly probated after his death.

The provisions of the Act of June 20, 1919, P. L. 521, under which it is claimed the real estate in question is subject to tax, are as follows: "Section 1. Be it enacted, etc., That a tax shall be, and is hereby, imposed upon the transfer of any property, real or personal, or of any interest therein, or income therefrom, in trust or otherwise, to persons or corporations in the following cases: . . . (c) When the transfer is of property made by a resident . . . by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death."

It is apparent and not disputed that the two deeds to and from J. H. Alexander were intended to transfer title from James Edwards to James Edwards and Jennie L. Edwards, husband and wife, as tenants by entireties; that there was no consideration moving between the parties to these conveyances, and that J. H. Alexander was merely a legal conduit pipe to effectuate the

1 D. & C.

aforesaid intention as to title. Was this transfer then either intended to take effect in possession or enjoyment at or after the death of James Edwards, or made by him in contemplation of death? The language, "intended to take effect in possession or enjoyment at or after such death," is the same language used in the Act of July 11, 1917, P. L. 832, relating to direct inheritance tax, and the Act of May 6, 1887, P. L. 79, and earlier acts relating to collateral inheritance taxes. It has been construed by the Supreme Court in several cases raising questions similar to the one before us. In Reish v. Com., 106 Pa. 521, the decedent, John Reish, while suffering from his last sickness, conveyed his property in fee to his brother, Isaac Reish, for the consideration of one dollar. At the same time Isaac Reish executed a bond conditioned for the faithful payment to John Reish of the net income of said property. The same argument as made in this case was made there, viz., that no title passed from John Reish at his death, but that it had previously vested in Isaac by virtue of the deed. It was held that the deed and bond constituted a single transaction, and the Supreme Court said: "All property is subject to the tax which, in the language of the statute, is transferred by deed, etc., *made or intended to take effect in* possession, *or enjoyment* after the death of the grantor. The Commonwealth's right to collateral inheritance tax is, therefore, not defeated by a conveyance of the title, nor by possession taken under it, if the enjoyment is intended to take effect at the death of the grantor. The enjoyment of real estate is not the exact equivalent of possession, nor is it so used in this statute; in no case could the distinction be more clearly made than in the case under consideration. Under his deed Isaac Reish was the undoubted owner of the lands in fee and of the personalty absolutely, and the title drew to it the right of possession; but by the express contemporaneous agreement of the parties, the ownership took effect *in enjoyment* at the death of the grantor. John Reish was entitled to receive the same income and profits from the property during his life as if the transfer had not been made. . . . The policy of the law will not permit the owner of an estate to defeat the plain provisions of the collateral inheritance law by any device which secures to him for life the income, profits and enjoyment thereof; it must be by such a conveyance as parts with the possession, the title and the enjoyment in the grantor's lifetime. . . . A very labored and ingenious argument is made to show that John Reish did not die seized or possessed of any estate excepting the bond and the right it secured; that these only should have been appraised. The learned counsel contend that 'the part of such estate or interest therein' transferred by the death of John Reish, and which took effect in enjoyment and possession, and these only, are subject to the tax. The letter, as well as the spirit and meaning of the act, however, is clear. When an estate is transferred by deed to any other than those exempted from the operation of the statute, intended, however, to take effect in enjoyment at the death of the grantor, it is the value of the lands so transferred which is liable to the duty, not the value of the interest or part remaining."

Applying the tests laid down in Reish v. Commonwealth to the facts of the case at bar, the transfer here is clearly within the statute. Conceding the argument that by the transfer Jennie L. Edwards took the title and right of possession to the whole, James Edwards, nevertheless, did not part with either the possession, the title or the enjoyment in his lifetime. He remained entitled to receive the same income and profits from the property during his life as if the transfer had not been made. It would seem then that the transfer was intended to take effect in enjoyment after his death, otherwise he would have

conveyed the whole estate in the land to Jennie L. Edwards by deed absolute and retained no estate for himself during his life, as he actually did.

In DuBois's Appeal, 121 Pa. 368, John DuBois, about two years before his death, executed and delivered to his nephew, John E. DuBois, a deed of conveyance of grantor's property, subject, however, to conditions, reservations and stipulations to the grantor to create liabilities to the full value of the property. The grantee, in consideration of the conveyance, covenanted to pay "all notes, obligations, debts, damages or contracts . . . executed, made or incurred at any time in the future till the day of his death by the said John DuBois," and the real estate was charged "for the full and faithful performance of this covenant." It further provided that in case the grantee should die before the grantor, the property should revert and become revested in the grantor. The Supreme Court said: "In the event of his surviving the grantee the deed was to become null and void, and everything revert to the former. During their joint lives the grantor had the power to incur obligations to the full value of the property, for which the property itself, as well as the grantee individually, was directly and specifically liable. The naked legal title acquired by the grantee was the merest shadow. The grantor held a firm grasp on the entire substance, and he retained it as long as he lived. In view of all this, it is idle to contend that in any proper or statutory sense of the word 'enjoyment' the conveyance in question took effect, or could have been intended to take effect, in enjoyment prior to the death of John DuBois." So here, if James Edwards survived Jennie L. Edwards, he retained the whole estate, and during their joint lives he held full control and enjoyment of the property.

In Lines's Estate, 155 Pa. 378, a decedent had conveyed all his property in trust to a trust company to collect the profits and pay them to the decedent during his life, and on his death to certain beneficiaries named, reserving in the decedent the power to alter the deed of trust at any time. It was there said: "The manifest purpose of our Collateral Inheritance Tax Law is to subject property limited by deed in the manner stated in the statute to taxation, because it is still substantially the property of the grantor and does not actually pass, nor is it intended to pass, to the collateral beneficiaries until his death, and hence it is essentially similar in that respect to a devolution of property by testacy or intestacy upon the death of the owner."

"When the right to income is retained during the life, the conveyance, as to enjoyment, does not take effect until the death of the grantor:" Todd's Estate (No. 2), 237 Pa. 466. See, also, Seibert's Appeal, 110 Pa. 329; Wright's Appeal, 38 Pa. 507.

In our opinion, the transfer in the case at bar is one intended to take effect in enjoyment at or after the death of the grantor, under the foregoing authorities. It makes no difference whether there was any intention or purpose of evading the tax or not. As was said in Conwell's Estate, 22 W. N. C. 183: "It is immaterial that no fraud was meant to be perpetrated; our duty is to close up the avenues through which fraud may by possibility enter. . . . If the statute may be avoided by a device like this, however innocent may have been the intention of the parties, it may soon be impossible to find an outlet for its operation at all."

It is also contended by the Commonwealth that the transfer in this case was one made in contemplation of death, and for that reason within the statute. This language does not appear in the statutes in this State relating to inheritance taxes prior to the Act of 1919, but it has been used in the statutes of many other states. We have found no Pennsylvania case construing this language. Elsewhere, however, it has been held that, as used in inheritance tax

statutes, the words "in contemplation of death" do not refer to that general expectation of death entertained by all persons, but to that expectation which arises from such bodily or mental conditions, irrespective of the cause in any particular case, which prompts persons to dispose of their property to those they deem entitled to their bounty. Gifts *causa mortis* come within the statute, but the expectation of death need not be so immediate or impending if the expectation is present, gifts *inter vivos* are also included: Conway's Estate *v*. State (Indiana), 120 N. E. Repr. 717; Rosenthal *v*. People, 211 Ill. 306, 71 N. E. Repr. 1121.

"A gift is made 'in contemplation of death' when it is made in expectation of that event or with that event in view. The term does not mean that general expectation which all rational persons have that they must die some time, but refers more particularly to that apprehension of death that arises from some existing infirmity of such a character as would prompt an ordinarily prudent person to make a disposition of his property and bestow it upon those whom he regarded as most entitled to be the recipients of his bounty. What prompts the making of such a conveyance rests upon the facts and circumstances surrounding each particular case. No general rule can be formulated which will fit all cases, but each case must be examined and determined on its own facts and circumstances in the light of the experience which the courts have gained in dealing with such matters. For this purpose the donor's age, physical condition and any action contemplated to be taken by him with respect to his health, as well as the length of time he survives the making of the transfers, are all proper matters to be considered in determining whether or not the act was done in contemplation of death. If, upon a consideration of all the surrounding facts and circumstances, it is apparent the donor's condition was such that he might reasonably have expected death at any time, and the disposition made of his property is such as he had contemplated making in that event, or such as he might reasonably be supposed to have desired to be made at his death, and no other moving cause is apparent for making the transfer at the time it was made, the gift will be deemed to have been made in contemplation of death, even though the transfer is absolute in form and such as would invest the donee with the absolute right to the property during the lifetime of the donor:" People *v*. Danks, 289 Ill. 542, 124 N. E. Repr. 625. See Merrifield's Estate *v*. People, 212 Ill. 400, 72 N. E. Repr. 446; People *v*. Porter, 287 Ill. 401, 123 N. E. Repr. 59; People *v*. Carpenter, 264 Ill. 400, 106 N. E. Repr. 302.

In the case at bar the transfer was made during the last illness of the donor, and about seven weeks before his death; his condition before making it was such as to arouse the apprehension of attending physicians as to the ultimate, though not the immediate, outcome. It may be reasonably supposed that the grantor, who knew his general condition, might have entertained the same apprehension. This, we think, would be within the language of the statute as above defined. There is no other moving cause apparent for making the transfer at the time it was made. It is true the grantor had talked of making some such transfer at different times, particularly before going to Europe, but he never had made such, and subsequently to his European trip in 1917, had made a will under which this property would pass to Jennie L. Edwards, the grantee. Under all the facts and circumstances, it seems to us that the reasonable conclusion is that the transfer was made by the grantor in contemplation of death as those words are used in the statute.

It follows from the foregoing conclusions that the real estate in question is subject to the tax.

Edwards's Estate.

And now, Dec. 30, 1921, it is ordered, adjudged and decreed that Jennie L. Edwards, executrix of the estate of James Edwards, deceased, pay to the Register of Wills of Warren County, Pennsylvania, the inheritance tax on the real estate known as the Carver House property, in Warren Borough, at the rate of 2 per centum on the appraised value thereof, said appraised value being $75,000, and the said tax amounting to $1500, within thirty days from this date; and it is further ordered, adjudged and decreed that the said executrix pay the costs of these proceedings within thirty days from this date.