ADDIE ROSENTHAL,

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Opinion filed October 24, 1904.*

INHERITANCE TAX—*gift made in expectation of death is taxable, regardless of intent to defraud.* An interest transferred by deed, grant, sale or gift is taxable, under section 1 of the Inheritance Tax act, (Laws of 1895, p. 302,) if made in expectation of death or having death in view, whether there was a fraudulent intent to thereby evade the law or not.

APPEAL from the County Court of Cook county; the Hon. ORRIN N. CARTER, Judge, presiding.

D'ANCONA & PFLAUM, for appellant.

H. J. HAMLIN, Attorney General, (E. M. ASHCRAFT, of counsel,) for the People.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Oscar Rosenthal died in Cook county on September 1, 1902, leaving appellant, Addie Rosenthal, his widow, and three children. He left an estate valued by the appraiser appointed by the county judge, at $691,408.96, which was disposed of by his will mainly for the benefit of his widow and children. Thirty-three days before his death he gave to appellant one thousand shares of capital stock of a cor-

poration, of the value of $100,000, and a credit of $50,000 on the books of the corporation, the gift aggregating $150,-000 in value. The county court decided that the gift was subject to the tax imposed by "An act to tax gifts, legacies and inheritances in certain cases and to provide for the collection of the same," in force July 1, 1895. (Laws of 1895, p. 301.) From the order of the county court this appeal was prosecuted.

The following facts appear from the evidence taken in the case: Oscar Rosenthal was a business man fifty-one years old, of wealth and culture, well educated and widely read. He was troubled somewhat for several years with what was supposed to be a rheumatic difficulty, causing a pain in his shoulder blade, for which he was occasionally treated, but his appearance was that of a vigorous, active business man. On July 7, 1902, symptoms of a different nature developed, indicating spinal disease. His family was then absent from Chicago in the east, and it was decided that he should take a trip on the lake. He did so, but returned on July 18, much worse, with aggravated symptoms and a weakness of the lower limbs. On the day of his return a consultation of physicians was suggested, which was held on July 20. The examination at that time showed a pressure on the spinal column, probably due to some malignant growth. When he came back from the boat trip his physician told him to write for his wife, knowing that he would be confined to his bed and would want his family near him. She was sent for and returned on July 20,—the day of the consultation,—and at that time his physician knew he would die, sooner or later, from the disease. He did not go to his business after his return, and after July 20 he was confined to his bed. On July 25 he was able to stand on his feet and use his limbs only with the greatest difficulty, and at that time his physician had become convinced that the course of the disease would be rapid, with a fatal termination. About July 28 or 29 the action of the bladder and bowels was affected and he began the use of a catheter

and enemas. He was also treated with the X-ray about that time. His attorney attended him and the gift was made to his wife on July 28. The will was prepared and was executed on July 31. About August 1 he had bed-sores, and the disease, which was a malignant tumor of a cancerous nature, progressed rapidly until his death. His physician did not tell him he was going to die. He did not ask the physician what was the matter with him and the physician did not tell him. He talked about going abroad to recuperate, and said nothing about his death. There was no talk by him or his wife, or any one, on that question.

The statute imposes a tax upon property which shall pass by will or by the intestate laws of this State, or "which shall be transferred by deed, grant, sale or gift made in contemplation of the death of the grantor or bargainor or intended to take effect in possession or enjoyment after such death." The question is whether the gift of $150,000 was made by Oscar Rosenthal in contemplation of his death, within the meaning of the law. The argument for appellant is largely devoted to the question whether the gift was a gift *inter vivos* or a gift *causa mortis,* and counsel contend that it was an absolute gift *inter vivos,* and that there was no evidence of an intent to defraud the State of the inheritance tax, and that for these reasons it was not subject to the tax. They rely upon decisions in New York, where the courts, in construing a similar statute, appear to have considered it important to determine whether the gift was *inter vivos* or *causa mortis,* and have held that if it was *causa mortis* the property would be subject to the tax, but if it was *inter vivos* the property transferred would not be taxable unless made by the donor and received by the donee for the purpose and with the intention of evading the inheritance tax and defrauding the State. There is no presumption that a person intends to commit a fraud, and under these decisions it must be proved that a gift *inter vivos* was made in contemplation of impending death and was made and received for the purpose of defrauding the State. We do not regard it as neces-

sary to classify gifts in that way in order to interpret or give effect to the language of our statute. While the statute was doubtless not intended to impose limitations on the right of a person to give away his property whenever he might see fit, the intention clearly was to tax property passing by will or the intestate laws of the State, or by such gifts or transfers as are of like nature and can properly be classed therewith. Gifts *causa mortis* would be within the statute,—that is, a gift by one who anticipates death as being near, made in view of his death and to take effect by that event. (*Telford* v. *Patton,* 144 Ill. 611.) The donor has a right to recover back the gift in case he survives, and it is of the nature of a legacy and subject to the debts of the deceased donor. The statute, however, embraces all gifts made in contemplation of death, and that language does not naturally or necessarily involve a fraudulent intent. Similar language is used respecting business transactions, such as settlements in contemplation of marriage; or a fraudulent intent may be involved, as in transfers in contemplation of insolvency or bankruptcy. A gift is made in contemplation of an event when it is made in expectation of that event and having it in view, and a gift made when the donor is looking forward to his death as impending, and in view of that event, is within the language of the statute. With that understanding of the law there is no doubt that the gift in this case was made in contemplation of death. The preparation of the will, under the circumstances and in view of the rapid progress of the disease, is strong evidence that death was expected, and no other moving cause than the expectation of death is apparent. While the widow and physician testified that the deceased did not expect to die, they also said that it was not the subject of conversation at all, and in view of his condition it is a fair inference that he was not so dull of comprehension as to suppose that he would get well.

We think the order of the county court was right, and it is affirmed.                    *Order affirmed.*