IN RE ESTATE OF FRANK KUETER, Deceased.

STATE OF SOUTH DAKOTA, et al., Respondent, v. KUETER, Administratrix, et al., Appellants.

(187 N. W. 625.)

(File No. 5000.   Opinion filed March 31, 1922.)

1. **Taxation—Inheritance Tax—Transfer "In Contemplation of Death"—Statute Construed.**

The phrase "in contemplation of death," in Sec. 6827, Code 1919, providing for imposition of tax on any transfer of property when made by a resident by deed, etc., when made "in contemplation of the death of the grantor * * or intended to take effect in possession or in enjoyment at or after such death," means one made in expectation of that event and having it in mind; and a gift made when donor is looking forward to his death as impending, in view of that event, is within the language of the statute. The meaning of said words must be inferred and ascertained from the context of the act and the object sought to be accomplished by the law; they are intended to cover transfers which, in view of that event, accomplish transfers in the nature of testamentary disposition; obviously they are not used as referring to that expectation of death generally entertained by every person, but rather to an expectation of death arising from such bodily or mental conditions as prompt persons to dispose of their property and bestow it on those they regard as entitled to their bounty. This accords with the general objects and purposes of the law as imposing a tax on devolution of property involved in demise of owner.

2. **Evidence—Father's Contract With Children To Deed Them Land, They To Remain Home And Work—Daughters' Testimony Re Contract Proven Otherwise, Non-necessity to Decide Statutory Question Re Party's Testimony.**

In a suit to enforce state's alleged right to impose an inheritance tax upon estate of decedent, there being abundant evidence other than that of two daughters who testified, over objection, to the contract between the father (decedent) and his minor children, to the effect that, in view of his physical

inability to do farm work, he had some ten or twelve years before his death made a contract with his children under which he agreed to deed to each of them in future and as soon as means at hand for acquiring further lands from proceeds of their farming, a quarter section of land,—it is unnecessary to decide whether the daughters' testimony was in violation of Sec. 2717, Code 1919, concerning testimony in actions, etc., against executors, etc. Moreover, testimony of witnesses to whom decedent had related that he had made such a contract, was competent to prove the contract and its performance.

**3.**  **Contracts—Father's Agreement With Children To Deed Them Land For Work, Whether Indefinite, Uncertain—Execution of Deeds As Construction and Execution of Contract.**

A contract between the father and his minor children that, in view of his physical inability to do farm work, he would deed each of them a quarter section of land when in future the means of acquiring enough more land to make that possible were at hand, in consideration of their remaining at home and working the farms, was not so indefinite and uncertain that specific performance could not have been enforced; especially when the parties had no difficulty in understanding and carrying it out. Held, further, that execution of the deeds was both a construction and an execution of the contract, thus removing all doubt or uncertainty, etc.

**4.**  **Contracts—Father To Deed Land to Children For Work— Whether Girls' Marriage Tantamount to Non-execution of Contract—Equitable Distribution of Land As Compensation to Other Grantees.**

The fact that two girls among decedent's children, to whom he had agreed, in consideration of them all remaining at home and working the farms, to deed each of them a quarter section as soon as means of acquiring sufficient land for such distribution,—married and left home several years prior to execution of deeds, does not prove non-execution of the contract by them so as to vitiate the transaction; this in view of the fact that, because of their having left home, lands of less value than those deeded to the other children were conveyed to them.

**5.**  **Testamentary Disposition—Father's Deeds to Children For Their Previous Farm Work, On Day of Making Will, Whether All One Transaction As Testamentary Disposition.**

The fact that the father, in execution of a contract with his minor children of some ten years previously, to convey each a quarter section if they would all remain home and work the farms, executed such deeds on the day of making his will, did not render such conveyances and will the same transaction and in effect a testamentary disposition of all his property; and

while execution of the will is a circumstance entitled to consideration, yet in view of conclusiveness of proof that deeds were executed in compliance with a previous contract, such circumstance is of little weight. Nor would fact that the father was aged and realized that death was impending when deeds were made, raise presumption that they were executed in contemplation of · death; especially when his age is not shown by evidence.

6. **Inheritance Tax—Conveyancing Deeds Recorded After Grantor's Death—Statutory Presumption of "Contemplation of Death"—Burden of Proof.**

Under Sec. 6870, Code 1919, in effect making fact of recording realty conveyances by a decedent, after his death, presumptive evidence of a transfer in contemplation of death, and placing upon person claiming thereunder burden of proof of showing otherwise, such subsequent recording raises such presumption and places such burden of proof on such claimant.

7. **Testamentary Disposition—Father's Deeds of Land to Children For Farm Work, Immediately Before Death, Whether Transfer "In Contemplation of Death"—Unchanged Physical Condition As Circumstance—Non-evidence of Belief of Impending Death —Deeds Effective Immediately, Effect.**

While decedent in fact died almost immediately after executing deeds to each and all of his children in compliance with a previous contract so to do in consideration of their remaining at home and working grantor's farms, yet, in absence of evidence of his belief that he was near death, his physical condition not having materialy changed during some ten years after making the contract; he being able to sit up when deeds were executed, and no evidence adduced that he thought death impending, and deeds being made to take effect immediately and carrying right of possession, and being delivered to a banker for delivery by him to grantees at their convenience; and **held, the deeds were not executed in contemplation of death** within contemplation of inheritance tax law.

Appeal from Circuit Court, Minnehaha County. Hon. JOHN T. MEDIN, Judge.

In the Matter of the Estate of Frank Kueter, Deceased. The State of South Dakota, and the State Tax Commission having brought a proceeding against Mary Kueter, Administratrix with the Will Annexed, and Bernadina Pirung, Magdelena Adella Kueter Sieverding, F. N. Kueter, John Kueter, Sarah Ann Dargen, and William W. Kueter, Grantees of certain Deeds in question, in the County Court, claiming these conveyances were made in contemplation of death, and to collect an inheritance

tax upon the property conveyed, which court found in favor of said 'Commission; an appeal having been taken by said estate to the Circuit Court, which also found for said Commission, said estate appeals from said judgment and from an order denying a new trial.  Reversed.

*Mundt & Mundt*, Attorneys for Administratrix with the Will Annexed, and *R. H. Warren*, Attorney for the Grantees in the Deeds, for Appellants.

*Byron S. Payne*, Attorney General, for Respondent.

(1)  To point one of the opinion, Appellants cited: People v. Burkhalter, 247 Ill. 600, 93 N. E. 379, 139 Am. St. Rep. 352. Gladville v. McDole, 247 Ill. 34, 93 N. E. 86, 38 L. R. A. (N. S.) 753; In re Lamb (Ia.), 117 N. W. 1118.

Respondent cited: Rosenthal v. People, 211 Ill. 306, 71 N. E. 1121; In re Benton, 234 Ill. 366, 84 N. E. 1026, 18 L. R. A. 558; State v. Pabst (Wis.), 121 N. W. 351; Rose v. Oliver (Oreg.) 52 Pac. 176.

(3)  To point three, Appelants cited:  Hespin v. Wendeln, 85 Neb. 172, 122 N. W. 852; Daily v. Minnick, 117 Ia. 563, 91 N. W. 913, 60 L. R. A. 840.

(7)  To point seven, Appellants cited:  People v. Burkhalter, 247 Ill. 600, 93 N. E. 379, 139 Am. St. Rep. 351; In re Crary, 31 Misc. 72, 64 N. Y. Supp. 566.

POLLEY, J.  This appeal grows out of an attempt by the State Tax Commission to collect an inheritance tax from the estate of Frank Kueter, deceased.  Decedent died in Minnehaha county on the 1st day of July, 1918.  At the time of his death he had a family consisting of his wife and six children—three sons and three daughters.  Four days prior to his death decedent conveyed by deed a quarter section of land to each of his six children.  The six quarter sections of land were worth at that time in the aggregate about $100,000.  Each deed recited a "consideration of $1.00 and love and affection."

The Tax Commission, claiming these conveyances had been made in contemplation of death, instituted proceedings against the estate in the county court to collect an inheritance tax on the property so conveyed.  The court found in favor of the Commission, and the estate appealed to the circuit court.  The circuit court

also found for the Commission, and the estate appeals to this court.

Section 6827, Rev. Code, provides that—

"A tax shall be imposed upon any transfer of property * * * when the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor * * * or intended to take effect in possession or in enjoyment at or after such death."

[1] What is meant by the phrase "in contemplation of death" is not difficult to understand. It is defined by the Supreme Court of Illinois, whose statute on the subject is identical with our own, as follows:

"A gift is made in contemplation of an event when it is made in expectation of that event and having it in view, and a gift made when the donor is looking forward to his death as impending, in view of that event, is within the language of the statute." Rosenthal v. People, 211 Ill. 306, 71 N. E. 1121.

And in Wisconsin this phrase is defined as follows:

"The meaning of the words, 'in contemplation of death,' * * * must be inferred and ascertained from the context of the act and the object sought to be accomplished by the law. It is manifest that they were intended to cover transfers of parties who were prompted to make them by reason of the expectation of death, and which, in view of that event, accomplish transfers of the property of decedents in the nature of testamentary disposition. It is therefore obvious that they are not used as referring to that expectation of death generally entertained by every person. The words are evidently intended to refer to an expectation of death which arises from such bodily or mental condition as prompts persons to dispose of their property and bestow it on those whom they regard as entitled to their bounty. This accords with the general objects and purposes of the law, namely, the imposition of a tax on the devolution of property involved in the demise of the owner." State v. Pabst, 139 Wis. 561, 121 N. W. 351.

We believe these views fairly state what is meant by "in contemplation of death," and with these views in mind let us examine the facts and circumstances under which the conveyances in question were made.

[2, 3]  Some 10 or 12 years prior to his death, decedent owned and lived on a farm of 480 acres of land in Minnehaha county. About that time his health became seriously impaired. Some of the witnesses said he had inflammatory rheumatism. One witness said he had leakage of the heart. He does not appear to have been alarmed so far as the immediate result was concerned, neither does he appear to have entertained any hope that his health would ever be restored; but he does appear to have been convinced that he would never be able to do any more hard work. Under these conditions, he called his family together. His children were then aged 10, 14, 17, 18, 20, and 23 years, respectively. He explained to them that he could no longer do the hard work necessary to carry on the farm, and that unless they would stay at home and do the work it would be necessary for him and their mother to leave the farm and eventually "eat up" all they had. He then made the children the proposition that they all would remain at home and work for him on the farm and turn over to him the proceeds of all they could produce; that he would use such proceeds to purchase more land until he had acquired enough to make a quarter section for each of them; that he would then deed to each child a quarter section of land. This proposition was accepted by all the children, and they all remained at home, and they all worked. The girls went into the fields and did all kinds of farm work just as their brothers did. They raised crops and hauled them to market and sold them and turned the proceeds over to their father. In 1912 decedent purchased two quarter sections in an adjoining township. The oldest daughter and the oldest son moved upon and worked these two quarters —raised crops and turned the proceeds over to decedent. This continued until about the month of April or May, 1918, when decedent purchased another quarter section—making six quarters in all. On the 26th day of June following, he conveyed to each of the children a quarter section of land as above stated.

On the trial two of the daughters were permitted, over objections of the state, to testify to the terms of the said contract and to the carrying out of its terms. This is claimed to be in violation of the provisions of subdivision 2 of section 2717, Rev. Code. Whether this section was violated we need not determine. There was an abundance of competent evidence to prove the contract exclusive

of the testimony of these two witnesses. The statements of the decedent were competent to prove the contract and to prove its performance. He told different parties in the neighborhood, on various occasions during the last few years of his life, that he had promised to give each of the children a quarter section of land if they would all stay at home and work for him until he was able to acquire that much land. During the month of April, 1918, while decedent was negotiating for the purchase of the last quarter section, he told one of his neighbors that when he secured the title to that quarter he would have enough to carry out his agreement with his children and that he was going to deed each of them a quarter. The deeds were drawn by one C. J. Maehl, cashier of a bank at Hartford. When he was drawing them decedent said he was deeding the land to the children in compliance with the contract he had made with them years before. This testimony, in connection with the conduct of all the parties concerned for a period of ten years, proves beyond all doubt that the contract was made.

It is contended by the state that the alleged contract was so indefinite and uncertain that specific performance could not have been enforced, and therefore the contract was not sufficient in law. The parties to the contract appear to have had no difficulty in understanding the contract and in carrying out its terms. The execution of the deeds was both a construction and an execution of the contract. This removed all doubt or uncertainty as to the subject-matter. Daily v. Minnick, 117 Iowa, 563, 91 N. W. 915, 60 L. R. A. 840.

[4] It is contended by the state that, admitting the contract was entered into as claimed, it was not carried out by the children—that two of the girls married and left home several years prior to their father's death and went to work for themselves. It is true they married and one of them did leave home and went to doing for herself; but the other one continued to work for her father after her marriage just as she had before. And in order to equalize the time lost by the other one, she was given a quarter section, 40 or 50 acres of which was occupied by a slough and for that reason of considerably less value than the other quarters.

[5] After the above deeds had been executed, but on the same day, decedent executed and published his last will and testa-

ment whereby he disposed of all his remaining property. It is contended by the state that the execution of the deeds and the will was all the same transaction and was in effect a testamentary disposition of all his property. The making of the will at that time is a circumstance that is entitled to consideration in connection with the execution of the deeds. But, in view of the very conclusive evidence that the deeds were executed in compliance with the terms of a contract theretofore entered into, this circumstance is of little weight.

[6]   It is further contended that the decedent was an aged man and realized that death was impending when the deeds were executed, and that from this fact it should be presumed that the deeds were executed in contemplation of death. Unfortunately for the state, there is no evidence in the record, other than the inference to be drawn from the age of his oldest child, tending to show the age of decedent. The evidence shows that his widow was 57 years old at the time of the trial, which was 2 years after decedent's death, but there is no presumption as to his age.

The deeds involved in this case were not recorded until after the death of the decedent; therefore under the provisions of section 6870, Rev. Code, such deeds are presumed to have been made in contemplation of death, and the burden of proof rests upon the claimants to show otherwise.

[7]   While the decedent did as a matter of fact die almost immediately after the execution of the deeds, there is no evidence to show that he believed or had any idea that he was near death. There is nothing to indicate that his condition was worse or different from what it had been for the past 10 years, except, of course, that he was 10 years older. He had been sick for 10 years. At times he could get around—even drive to town occasionally. At times he could only sit up and be about the house. At still other times there were intervals when he would be confined to his bed. At the time he executed the deeds, he was able to sit up in a chair and remained sitting up throughout the afternoon. There was nothing whatever to indicate that he thought death was impending, or that he felt any nearer death than he had at any time during the past ten years. One witness who was well acquainted with decedent, and who had known his condition during all the time he had been sick, testified that he was not

surprised when he heard of Kueter's death, nor would he have been surprised to have heard of his death at any time during the past five years.

The deeds were not intended to take effect at the death of grantor or at any future date. They were to take effect upon delivery and gave the grantees the right of immediate possession. The grantees were not present when the deeds were executed. Mr. Maehl, who prepared the deeds, was directed to take them to his bank in Hartford, where the children would come and get them at their convenience. This constituted a sufficient delivery of the deeds. There was no haste about any part of the transatcion, and the decedent appears to have had no purpose in mind other than to perform a duty he owed to his children in carrying out an agreement he had made with them long before.

In our opinion the evidence affirmatively shows that the deeds were not executed in contemplation of death, and the findings and judgment should have been for appellants.

The judgment and order appealed from are reversed.