UNITED STATES TRUST CO. OF NEW YORK, EXECUTOR, ESTATE OF CHARLES F. ROE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11030.   Promulgated November 16, 1928.

*John W. Davis, Esq., Edward L. Patterson, Esq.*, and *Montgomery B. Angell, Esq.*, for the petitioner.

*Frank T. Horner, Esq.*, for the respondent.

## OPINION.

TRUSSELL: Section 402 (c) of the Revenue Act of 1921 provides that there shall be included in the gross estate of a decedent at the time of his death:

\* \* \* Any interest therein of which the decedent has at any time made a transfer, or with respect to which he has any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death (whether such transfer or trust is made or created before or after the passage of this Act), except in case of a bona fide sale for a fair consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

This provision, which is the same in the Revenue Acts of 1918 and 1924, has been before the Board and the courts in many cases and the construction uniformly applied is that by the term " contemplation of death " is meant an apprehension of death within the reasonably near future from some existing bodily or mental condition, and not the general expectation of ultimate death entertained by everyone, and that such contemplation of death must be the motive which prompted the transfer and without which the transfer would not have been made, in order to include the transferred property in the estate of the decedent subject to tax. *Illinois Merchants Trust Co., Executor*, 12 B. T. A. 818; *Isaac Gimbel, et al., Executors*, 11 B. T. A. 214; *Philip T. Starck, Executor*, 3 B. T. A. 514; *Hannah M. Spofford, Administratrix*, 3 B. T. A. 1016; *Spencer Borden, Jr., Executor*, 6 B. T. A. 255; *Anna Serrien, Executrix*, 7 B. T. A. 1129; *Spreckels* v. *State*, 158 Pac. 549; 36 Cal. App. 363; *Rea* v. *Heiner*, 6 Fed. (2d) 389; *Meyer* v. *United States*, 60 Ct. Cls. 474.

In the case before us the decedent, three months before his death, transferred to his daughter certain property. It is not questioned that the transfer was a gift, intended to take effect *in praesenti* and the sole question presented is whether or not the proof adduced is sufficient to show affirmatively that decedent's action was induced by some motive other than contemplation of death as above defined, such affirmative showing being necessary to rebut the presumption created by the section of the statute quoted.

It is a difficult thing at best to determine definitely the motive actuating a person now dead, in the performance of some act. The

lips of the one witness who could speak with actual knowledge are silent, and we must seek our conclusion from evidence of the facts in connection with and leading up to the transfer, and the physical condition and state of mind of decedent at the time.

In the present case the decedent is shown to have been a man of fine intelligence, possessed of a large estate, and who had up to within a few months of his death enjoyed exceptionally fine health and bodily vigor. For his widowed daughter and her two children he had a deep affection. He had always given his daughter a very generous allowance, which was continued after her marriage, and following her husband's death he had been the sole support of herself and children, giving her for that purpose from $25,000 to $30,000 a year. He had made his will by which she would succeed to the total income from his estate upon his death. He had on several occasions in the past discussed with his attorney and with a close friend and business adviser, the matter of transferring to his daughter securities sufficient to give her an independent income and had expressed his intention to do so, and had so advised his daughter. The record shows that during his illness in the spring of 1922 his daughter had been embarrassed by lack of funds, due to his temporary inability to attend to his affairs, and that during his convalescence he was advised of this, and stated that he had long intended to make a transfer to her of some securities and would do so upon his next visit to his bank box. Shortly thereafter upon his return to New York he walked with his daughter to his bank and personally selected certain securities and had them transferred to her.

This testimony shows a definite motive for the transfer other than contemplation of death—a determination arrived at long prior to his illness. On the other hand, the record indicates that at this time, decedent was ignorant of his serious physical condition and was not anticipating his death in the near future, as evidenced by his constant discussions of his plans for the resuming of his normal outdoor activities, and the transfer itself suggests that he did not anticipate that death was imminent as the reason for it, in so far as provision for his daughter was concerned, would not have existed in that case, as his death would have placed abundant funds at her disposal. The only reason which a contemplation of death would have suggested for his action would be to permit his estate to escape the payment of tax on the transferred property and the evidence in our opinion does not support such a conclusion. The property transferred was less than 10 per cent of decedent's estate and he had during the past years paid a high surtax rate on income although he had expressed his intention of making this transfer to his daughter and

the saving in his taxes in such case was fully realized by him. The facts in this case justify such a conclusion even less than those in *Vaughan* v. *Riordan*, 280 Fed. 742, in which the court said:

The idea of defrauding the Government out of a comparatively small amount of the inheritance tax, when presumably he knew that his estate would be required to pay a very large sum, to-wit: $249,475.51, to my mind is inconceivable, and any presumption arising under the statute that the gift was made in contemplation of death is, I think, fairly overcome by the existing facts and circumstances.

We hold that the transfer of the securities by decedent to his daughter on September 6, 1922, was not made in contemplation of death and accordingly the property transferred should not be included in decedent's gross estate.

The second issue is upon the value of two promissory notes which were included by respondent in decedent's gross estate at a valuation of $12,350. Petitioner contends that these notes were wholly worthless and uncollectible at the time of decedent's death. The burden is upon him to establish this. The notes are not in evidence, petitioner's attorney testifying that they were " probably destroyed." It is testified, however, that they were due September 20 and 25, 1911, respectively, and petitioner insists that this proof is sufficient to show that they were barred of collection by the statute of limitations of New York State (New York Civil Practice Act, sec. 48) and that the right to satisfy the indebtedness evidenced by the note for $20,000 was limited at best to the enforcement of the lien against the collateral, as the conditions of the pledge gave no right to sell, and that not only was this collateral without market value, but a suit to foreclose the lien was barred by the 10-year limitation of the statute (New York Civil Practice Act, sec. 53). It is also insisted that even though the notes were not barred by the statute of limitations they had no value, as the maker, State Senator Louis F. Goodsell, had died prior to the death of General Roe, and his estate was insolvent.

We can not conclude from the fact that the due date on the face of the notes was more than six years prior to the death of decedent that these notes were barred at that time from collection. There may have been payments of interest subsequent to maturity or other conditions which extended the time. The burden is upon petitioner and he has merely proved a due date on each note which may or may not be the one from which the statute runs. Nor is the mere fact of insolvency of the estate of the maker proof that the notes were wholly worthless. The record does not show what were the assets and liabilities of the Goodsell estate. It is merely testified that it was insolvent, which may mean that it had no assets or that it could pay a large percentage upon its indebtedness.

However, aside from the questions of the bar of the statute of limitations and the ability of the Goodsell estate to pay any amount, it is shown that the note for $20,000 was secured by a pledge of collateral consisting of 494 shares of stock of the Citizens Water Works Co. of Highlands, N. Y., of the par value of $25 per share. Petitioner insists that the right of the pledgee to enforce his lien was doubtful, when suit upon the debt was barred by the limitations of section 48 of the New York Civil Practice Act and that, in any event, the lienor could not sell the property to satisfy the debt, as no specific right of sale was given in the pledge, but was limited to a suit to enforce the lien and that such suit was barred by the 10-year statute referred to.

With this we can not agree. The rule appears to be well settled in New York that the lien of a pledgee holding possession of the property is not subject to the statutory limitations and may be enforced even though suit upon the debt is barred, and that the lienor may, by complying with the provisions of sections 200–210 of the lien law, sell the pledged property to satisfy the lien without bringing suit to foreclose. *Hudson* v. *Title Guarantee & Trust Co.*, 195 N. Y. Supp. 316.

The record shows moreover, that the stock of the Citizens Water Works Co. had a very substantial value at the time of decedent's death. The property was in good condition and operating and a surplus had accumulated. Its value was in excess of its liabilities including stock. It had not paid dividends on its stock, its earnings having been paid out as salaries to its two stockholders. The testimony in respect to this company by its president, who with Senator Goodsell owned all·of the stock, shows that he considered the stock as having a very substantial value. The fact that stock with a very substantial intrinsic value had never been placed on the market because it was closely held by two men, and consequently had no determined market value, does not mean that it was wholly without market value or without actual value as collateral upon a note, as petitioner insists. The record is silent as to what disposition was actually made of this stock by petitioner, but we can assume from petitioner's general denial of market value that there was no enforcement of his lien by sale and from the statement that the notes were probably destroyed we presume that some settlement was effected which must have been either by petitioner retaining the stock, or by releasing it to the Goodsell estate. If the first was done, a value in the note is thereby demonstrated and if the latter, then a voluntary release was made of something with a substantial asset value upon which petitioner held an enforceable lien. The action of respondent with respect to this item is approved.

*Judgment will be entered pursuant to Rule 50.*