CLARENCE A. NEAL AND MARSHALL S. NEAL, EXECUTORS, AND MARY NEAL CRUTCHER, EXECUTRIX, ESTATE OF FERNANDO PHINEAS NEAL, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 24197.   Promulgated June 14, 1929.

*Phil D. Morelock, Esq.*, for the petitioners.
*P. M. Clark, Esq.*, for the respondent.

## OPINION.

LITTLETON: The major question presented is whether the evidence is sufficient to overcome the presumption that certain gifts made by decedent within two years of his death were made in contemplation of death, within the meaning of section 402 (c) of the Revenue Act of 1921, which reads in part as follows:

* * * Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two

years prior to his death without such a consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title.

The question is whether the evidence negatives the presumption of fact that the gifts were made in contemplation of death. To state the question another way—since the gifts were made within two years of decedent's death, does the evidence establish that they were not made in contemplation of death? *C. D. Lehman, Executor,* 6 B. T. A. 791. The answer must be determined by taking into account not only the facts and circumstances connected with the making of the gifts, but also the decedent's mental and physical condition at such time. It is also proper that the presumption of fact to the effect that such gifts were made in contemplation of death be considered in arriving at the ultimate fact with which we are concerned. *Shwab* v. *Doyle,* 269 Fed. 321; *Herbert Kahn et al.,* 4 B. T. A. 1289. In *Shwab* v. *Doyle, supra,* the court said:

* * * The provision in question raises a presumption of fact, not a presumption of law, and under well-settled rules a presumption of fact may be taken into account in determining the ultimate fact. The presumption is merely a rule of evidence whose enactment is within the legislative competency. *Mobile, etc., R. R. Co.* v. *Turnipseed,* 219 U. S. 35, 42, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463. The very object of a presumption of fact is to supply the place of facts. *Lincoln* v. *French,* 105 U. S. 614, 617, 26 L. Ed. 1189. Of course, a presumption can never be allowed against ascertained and established facts. But unless the statutory presumption may properly be taken into account in determining the ultimate fact, it has no office. Elements which, in the absence of evidence to the contrary, are made sufficient to conclusively establish the ultimate fact, cannot be said to have no evidentiary influence in reaching that conclusion.

Also, the Circuit Court of Appeals for the Second Circuit said, in *Luscomb* v. *Commissioner,* 30 Fed. (2d) 818:

Section 402, sub. div. (c) of the Act of 1921 (42 Stat. 227, 277, 278) provides that a transfer of a material part of property of a decedent in the nature of a final disposition or distribution thereof made by decedent within two years prior to his death, without a consideration, shall unless shown to the contrary, be deemed to have been made in contemplation of death. Due regard must be had for this presumption as well as the finding of the Board against the taxpayer.

When all of the evidence is considered in connection with the presumption of fact contained in the statute, we are not satisfied that the presumption has been overcome. While it is shown that Neal had not been advised of the seriousness of his condition by one of the attending physicians who testified, this does not necessarily mean that he, himself, was not aware of the existence of physical infirmities which later resulted in his death. As early as August, 1923, he had an attack apparently similar to the one of November 19,

1923, and it is further shown that it was of sufficient importance to have been remembered and recounted when the later attacks occurred. Each recurrence of the trouble seems to have been more serious than the one preceding. The petitioners urge that mental alertness, continued interest in business activities and plans for future pleasure and general optimism are opposed to the proposition that the decedent in any way anticipated, contemplated or suspected that death was to be expected in the close or " reasonably distant " future and these facts are, of course, of importance, but we do not regard them as conclusive of the issue before us, since man sometimes exudes optimism and courage when pessimism and fear exist within. In many cases this may be an unnatural condition, but it is, nevertheless, true that outward appearances are no infallible index to man's inner consciousness. As was said by the court in *Rosenthal* v. *People*, 211 Ill. 306; 71 N. E. 1121:

His physician did not tell him he was going to die. He did not ask the physician what was the matter with him, and the physician did not tell him. He talked about going abroad to recuperate, and said nothing about his death. There was no talk by him or his wife, or any one, on that question.

* * * * * * *

* * * While the widow and physician testified that the deceased did not expect to die, they also said that it was not the subject of conversation at all, and in view of his condition it is a fair inference that he was not so dull of comprehension as to suppose that he would get well.

When we come to examine the dates when the gifts were made or action to that end taken, the evidence supports, rather than rebuts, the presumption in question—at least it seems " passing strange " that the gift to Marshall Neal on account of the purchase of Phillips Petroleum Co. stock should have been made on the day that the second, or first serious, attack occurred and that the first record we have of positive action taken with respect to the so-called Christmas gift to the three children was on the day the final and fatal attack occurred. Witnesses testified that on various occasions prior to the making of the gifts, in fact several years prior to 1923, the decedent had discussed a division of his property among his children, but nothing to that end appears to have been done until after unmistakable signs of the illness appeared. The letter of December 15, 1923, did not constitute the making of the gift, but was merely a written expression of his intention to make the gift. Expressions apparently to the same effect, though perhaps oral, had been made prior to this time, since one of the sons testified that they (the children) had asked the decedent's secretary many times about his action in regard to these gifts and that he (the decedent) had talked of it for at least five years. The fact remains that definite action was taken only after positive danger signs appeared. It is hardly reasonable to think

that a man of Neal's intelligence would not sense something more than ordinary physical disability when he was advised in August, 1923, to use radical measures as to his health and in November, 1923, to do no walking, to abstain from golfing or any severe physical exertion, not to get unduly excited or aroused and to be careful of his diet. His outward apparent disregard of these instructions is not determinative of his lack of realization of the seriousness of his condition.

It is further significant that while the decedent indicated in his letter of December 15, 1923, that there might be some delay in transferring the securities and that he desired to make the gift as a Christmas present, he apparently did not undertake to have the securities transferred prior to December 24, 1923. At least the record is silent as to anything which may have transpired from December 15, 1923, to December 24, 1923, when an entry was made on decedent's books, by his secretary, of the securities' included in the gift, with the explanation, " Sundry stocks as follows, given to children * * *." This, of course, was the day on which the decedent went to the office of his physician, who gave the following description of his condition at that time:

His condition at that time was very grave. He had signs at that time of heart failure. He had evidence of some dropsy and some fluid in his abdomen; and his condition, all in all, was indicative that the heart muscles were showing evidence of strain.

The next step in the completion of the gift seems to have occurred a day or two after January 1, 1924, when the son who lived in California arrived. At this time the children indicated a tentative division of the stock among themselves and submitted it to the decedent, who, after one or two changes, approved it. Thereafter the stock was transferred, but since the transfer agent in some instances was located in New York, some 30 days were required to complete the entire transaction. The decedent was not only a man of large affairs, but also actively engaged in the banking and investment business, which certainly made him familiar with the requisite time necessary for the transfer of the securities. The fact, therefore, that he apparently took no action looking to the fulfillment of his intention, as set out in the foregoing letter, until the day when he became seriously ill, would indicate that it was the serious illness which spurred him to action and caused him to make the gift. In any event, it tends to support, rather that to rebut, the presumption in question.

And here we consider it pertinent to remark that although the decedent's secretary was still alive at the time of the hearing, she was not presented as a witness, nor was a satisfactory explanation given of the failure to call her or to take her testimony on deposi-

tion, as was done in the case of two other witnesses. She had been employed by the decedent for about 15 years or more and was seemingly highly regarded by him. And, further, it would appear that the carrying out of the detail and the completion of the gift were largely intrusted to this person. Whatever instructions were given would seem to have been given to her and apparently the children got their advice from her as to the designated stocks to be transferred. Under such circumstances, it would seem only reasonable to say that testimony from her as to the mental and physical condition of the decedent when the stocks to be distributed were designated would have been very helpful in reaching a correct conclusion.

The evidence as to prior Christmas gifts did not establish a prior practice or prior gifts comparable to those here under consideration. The fact that the decedent considered these gifts of sufficient importance to give his children advice by letter in regard thereto and that he referred to the gifts as " substantial " would indicate that these gifts were to be something out of the ordinary. And, further, the closing paragraph in that letter has somewhat the tone of one who might consider his remaining life of short duration, rather than of a person who had no reason to expect death in the near future.

We are, accordingly, of the opinion that on a consideration of the entire evidence, particularly the circumstances attendant upon the making of the gifts and the decedent's health at such time, the petitioners have not established that the gifts by decedent to his children were not made in contemplation of death. The evidence with respect to the gift to Miss Kelley was, if anything, less conclusive than that with respect to the gifts to the children. The fact that the decedent had assisted her in making financial investments, had paid her what Marshall Neal described as a rather low salary, though it was far from nominal, and had held her in high regard, are not considered sufficient to show that it was not a gift in contemplation of death, when the gift was apparently made at the the same time as the others in question.

On the question of valuation, no evidence was introduced except as to the stock of the Kansas City Life Insurance Co., bonds of the Kansas City Outer Belt Railroad Co., bonds of the Orient Realty Co., stock of the Kansas City Terra Cotta Co., and the Junction Bill Receivership. We have carefully considered the testimony offered in support of the values contended for and we are of the opinion that it does not overcome the *prima facie* correctness of the Commissioner's findings.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

MORRIS, dissenting: I am unable to agree with the majority opinion that the evidence does not overcome the presumption that certain gifts made by the decedent within two years of his death were made in contemplation of death within the meaning of section 402 (c) of the Revenue Act of 1921.

Contemplation of death is an apprehension of death within the reasonably near future from some existing bodily or mental condition and not the general expectation of ultimate death entertained by everyone, and such contemplation of death must be the motive which prompted the transfer and without which the transfer would not have been made, in order to include the transferred property in the estate of the decedent subject to tax. *United States Trust Co. of New York, Executor*, 14 B. T. A. 312. In *Flannery* v. *Willcuts*, 25 Fed. (2d) 951, the Circuit Court of Appeals for the Eighth Circuit used the following language:

We are also in accord with counsel's statement in his brief that the cases " hold that the thought of death must be the actuating motive without which the gift would not have been made " adding thereto the qualification that the " thought of death " as an anticipation of the inevitable which we all realize is not within the statute; but to be within the statute the thought must arise because of some known infirmity which, it is believed, will likely cause death.

Examining the evidence in the instant proceeding to determine whether it overcomes the presumption that the motive which prompted the transfer was contemplation of death as above defined, I find that after the attack which Neal suffered in November, 1923, his physician felt that his condition was not such as to indicate immediate death and, furthermore, that if the strain on the heart could be kept down there was no reason why he should not live for an indefinite period and that after his condition became serious in December, 1923, he was not apprised of the seriousness of his condition by the doctor, that his mental condition during November and December of 1923 was keen and alert, he was in a pleasant frame of mind, and his attitude was one of hope and expectancy that he would soon recover, and that he had for some time planned and was still planning, in January, 1924, to go to California. It is further shown that Neal was active up to the time of his death, except of course for the period of his confinement.

It also appears that it was Neal's practice to make gifts to his children at Christmas time, which at times were more substantial than at others; that he loaned his children money to assist them in business and for purposes of investment; that Neal discussed at various times as far back as 1911 or 1912 the matter of giving his children property, stating that he thought it better to distribute his estate and not wait until his children might receive it in a lump sum, in order that they might learn to use it intelligently and in order

that they might have the benefit of his advise in so doing. Letters dated December 15, 1923, written by Neal to two of his children prior to the time his condition was considered serious, conveyed his desire to make them a substantial 1923 Christmas gift and his intention to have it effected as soon as possible.

While it is usually difficult to determine motivating factors operating in one's mind, it is my opinion that the letters of December 15, 1923, addressed to his children prior to the time that even his physician considered his condition alarming, more clearly evidence the purpose of the gifts than inferences drawn from the other facts of record. Admittedly, the gift was not perfected until a short time later, during which there was a decided change in Neal's condition, but the motive of the gift was clearly evidenced prior thereto. The decedent's changed condition during the lapse of time incident to the formalities of the execution of the gifts does not affect his expressed intention to make these gifts as a Christmas present for 1923.

Considering the above facts, I am of the opinion that the statutory presumption that the gifts were in contemplation of death has been overcome. See *William L. Nevin, Executor*, 16 B. T. A. 15.

GREEN and SIEFKIN agree with this dissent.